**SMILEY WANG-EKVALL, LLP**
Lei Lei Wang Ekvall, State Bar No. 163047
*lekvall@swelawfirm.com*
Kyra E. Andrassy, State Bar No. 207959
*kandrassy@swelawfirm.com*
Michael L. Simon, State Bar No. 300822
*msimon@swelawfirm.com*
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Telephone: 714 445-1000
Facsimile:  714 445-1002

Counsel for Robert P. Mosier, Receiver

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>             Plaintiff,<br><br>v.<br><br>KENT R.E. WHITNEY, DAVID LEE PARRISH, THE CHURCH FOR THE HEALTHY SELF A/K/A CHS TRUST, AND CHS ASSET MANAGEMENT, INC.,<br><br>             Defendants. | Case No. 8:19-CV-499-JVS-KES<br><br>**FIRST INTERIM APPLICATION FOR APPROVAL OF FEES AND COSTS OF SMILEY WANG-EKVALL, GENERAL COUNSEL TO THE RECEIVER**<br><br>**DATE:** June 24, 2019<br>**TIME:**  1:30 p.m.<br>**CTRM:** 10C<br>**JUDGE:** Hon. James Selna |

**TO THE HONORABLE JAMES SELNA, UNITED STATES DISTRICT JUDGE, AND THE PARTIES TO THIS ACTION:**

Smiley Wang-Ekvall, LLP (the "Firm"), general counsel to Robert P. Mosier, the permanent receiver (the "Receiver") appointed by the Court with respect to Kent R.E. Whitney, David Lee Parrish, The Church for the Healthy Self aka CHS Trust, and CHS Asset Management, Inc. (together, the "Receivership Defendants"), submits its first interim fee application for the period from March 14, 2019, through March 31, 2019 (the "First Application Period"), as required by the *Order Appointing Receiver* (the "Receiver

Order").  Through this application, the Firm seeks interim approval of $63,153.00 in fees and $2,117.13 in expenses, and an order authorizing the Receiver to pay, on an interim basis, 80% of the fees and 100% of the expenses incurred.  The Firm shared this application with the Securities and Exchange Commission ("SEC") prior to its filing with the Court and is informed that the SEC has no objection to the relief sought by the Firm.

## I. INTRODUCTION

This equity receivership involves an investment fraud perpetrated by the Receivership Defendants that is the subject of the complaint filed by the SEC.  The Court appointed the Receiver on a permanent basis on March 14, 2019, the same day that it entered a temporary restraining order and asset freeze order.

The Receiver Order vests the Receiver with broad authority to secure, preserve, and protect the assets of the Receivership Defendants, to prosecute actions to recover assets, to review and analyze investor claims, and to maximize the amount ultimately available to the defrauded investors.  It also authorizes the Receiver to retain counsel to assist him with these duties, and the Receiver retained the Firm on the same day that he was appointed.  Since then, the Firm has worked closely with the Receiver to identify and collect assets and books and records in order to identify additional assets and potential litigation targets.  Because the Receivership Defendants are not cooperating with the Receiver and many of the key employees are similarly not cooperating, even identifying the investors has proven challenging, although the Receiver is close to having what is believed to be a complete list of investors.  Despite the challenges, a little more than a month into the receivership, the Receiver and the Firm had collected $92,568.54, identified approximately $142,206.00 in bank accounts

belonging to the Receivership Defendants and had located and frozen approximately $739,000 in funds that the Receiver is informed and believes are being held for the benefit of the Receivership Defendants. As of the filing of this Application, the Receiver has collected additional sums, in part through an auction of personal property, and is holding net proceeds of $276,320. Asset location efforts are ongoing and the Firm and the Receiver are analyzing whether litigation is warranted to recover additional assets.

During the First Application Period, the Firm incurred fees of $63,153.00, broken out as follows:

| Category | Hours | Amount |
|---|---|---|
| Asset Investigation and Recovery | 124.90 | $51,317.10 |
| Case Administration/General Receivership | 30.60 | $11,835.90 |
| Total Fees | 155.50 | $63,153.00 |

The Firm is seeking approval of $63,153.00 in fees and $2,117.13 in costs and payment of 80% of the allowed fees and 100% of the allowed costs from available funds.

## II.   CASE NARRATIVE

Upon being appointed, the immediate focus of the Receiver was on gaining control of the residences of the individual Receivership Defendants and the business locations for the corporate Receivership Defendants. At the residences, the Receiver seized cash totaling $53,037 and various items of personal property, including designer handbags and jewelry. At the business locations, the Receiver took control of the books and records, including the computers, and shut down the operations. The Firm assisted the Receiver in reviewing books and records and communicating with financial institutions, which resulted in the turnover of $37,635.12 from accounts belonging to David Parrish. The Firm is in the process of coordinating the turnover of $93,665 in a trading account at Ironbeam and

the liquidation of investments in a TD Ameritrade account that had a value as of the end of March of approximately $47,000. In addition, the FBI seized approximately $4.4 million from accounts in the name of CHS, although it is presently unclear whether these funds will be turned over to the receivership estate for distribution or whether it will be handled in a different manner. The Receiver has also liquidated personal property seized from the various locations and received net proceeds of $54,194.94 from that auction. Attached hereto as Exhibit "A" is a copy of Exhibit "A" to the Receiver's fee application, which is the Receiver's schedule of cash receipts and disbursements and the Standard Fund Accounting Report.

At this point, the case remains in its early stages. As set forth in the Receiver's fee application, the Receiver has so far identified 541 accounts and is in the process of determining each investor's net investment based largely on bank statements and related records. The Receiver is also identifying which are employees or friends of employees who may not hold legitimate accounts. The Receiver and the Firm are mindful of the financial and emotional distress that the Receivership Defendants inflicted on investors, and intend to administer the estates as expeditiously as they can and, if possible, to make an interim distribution so that investors do not have to wait until the conclusion of the case to receive their pro rata share of funds. Because it appears that most of the tangible assets acquired with the investor funds have been located, the Firm and the Receiver are using deposition testimony and the books and records to identify other potential sources of recovery for the investors. This analysis is ongoing.

## III. SUMMARY OF TASKS PERFORMED AND COSTS INCURRED

### A. Categories and Description of Work

#### 1. Asset Analysis and Recovery

[$51,317.10 in fees for 124.90 hours of work; blended hourly rate: $410.86]

During the First Application Period, the bulk of the Firm's services were incurred in connection with asset analysis and recovery, which is to be expected in the first few weeks of a receivership case involving investment fraud.

Once the Receiver was appointed, the Firm assisted him with the legal aspects of securing the residential properties where Mr. Whitney and Mr. Parrish lived and CHS Trust and CHS Asset Management (together, "CHS") conducted business. The Firm also counseled the Receiver regarding the removal of personal property from the premises and the liquidation of this property. At the CHS office in Westminster, the Firm reviewed the physical books and records in order to identify potential assets and investors.

Armed with information compiled by the SEC and additional information gleaned from the books and records, the Firm prepared letters to all of the financial institutions where the Receivership Defendants and certain parties acting on their behalf banked. The Firm notified the banks of the Receiver's appointment and the asset freeze order, requested documentation from the banks, and froze bank accounts that had not already been frozen by the SEC. For those accounts held in the name of the Receivership Defendants, the Firm has been communicating with the financial institutions to obtain turnover of the funds and, where the account held investments, to liquidate the investments and turn over the cash balance. In addition, because it was apparent that CHS had made significant payments to American Express, the Firm worked to obtain statements from American Express detailing the charges.

In order to implement and enforce the provisions of the Receiver Order requiring employees and agents to cooperate with the Receiver, the Firm prepared letters to former employees to notify them of obligations under the Receiver Order. The Firm reached out to certain employees to attempt to obtain their cooperation, usually to no avail. The Firm attended the depositions noticed by the SEC of Mr. Whitney, Mr. Parrish, and a handful of other key parties. The Firm did so in order to obtain factual background, gauge the credibility of the witnesses, and to identify potential assets and sources of recovery. The Firm also used these depositions to ask questions on behalf of the Receiver and, often, to informally meet with witnesses after the deposition.

The Firm assisted the Receiver with redirecting the CHS website to a website set up by the Receiver. Doing so required a number of letters, but was ultimately successful.

The Firm also incurred fees in this category reviewing bank records and related documents as they were produced, with the goal of potentially identifying large transfers in recent months that might be recovered. This review led to the Firm sending a handful of letters to third parties requesting additional information, and to the issuance of a couple of subpoenas to escrow and title companies for additional information. This process is ongoing.

### 2.   Case Administration

[$11,835.90 in fees for 30.6 hours of work; blended hourly rate: $386.79]

During the First Application Period, the Firm incurred fees in this category in connection with the redirection of the CHS website to the website established for the defrauded investors. This required multiple letters to different companies before the Firm was able to definitively identify the web host and obtain its cooperation to redirect the website based on the

authority granted to the Receiver under the Receiver Order.  The Firm assisted the Receiver with the language on the investor website and with communicating with reporters after the issuance of a press release intended to get the word out to the Vietnamese community about the fraud perpetrated by the Receivership Defendants.  Even after the Court appointed the Receiver and froze the assets of the Receivership Defendants, investors were still stopping by the CHS office and trying to deposit funds with CHS.  In addition, because of the lack of cooperation of key employees and the disarray of the CHS books and records, the Receiver wanted to cast a wide information net in order to encourage investors to come forward, both as a mechanism for giving them information and also to use that information to determine the degree of accuracy of the CHS books and records with respect to the amount invested and the identity of investors.

During this period and in the first weeks of the case, the Receiver communicated with the SEC fairly frequently in order to apprise the SEC of the status of his efforts to locate and seize assets and identify investors. The Firm communicated with the Receiver on a daily basis about the status of its efforts and assisted the Receiver with the preparation of an initial status report that was filed with the Court in advance of the first preliminary injunction hearing and with the preparation of a second status report that was filed in connection with the preliminary injunction hearing that was continued as to Mr. Parrish.  The Firm attended the preliminary injunction hearing with the Receiver.

The Firm has also periodically fielded telephone calls and emails from investors inquiring about the status of the case in general and about the status of their investments.  Investors are first being directed to the website that was set up to provide them with information, and next to the Receiver's

office, but the Firm has responded and will continue to respond to investors who contact the Firm for information. The Firm also made revisions to the letter that the Receiver sent to the identified investors to inform them of his appointment and giving them information about what they can expect over the coming months.

Last, the Firm started preparation of a motion in aid of implementation of the Receiver Order that seeks formal Court approval for the Receiver's employment of various retained professionals, including the Firm. The Court recently granted that motion.

### B. Summary of Expenses Requested for Reimbursement

The Firm requests that the Court approve reimbursement of $2,117.13 in out-of-pocket costs. The itemization of the expenses is summarized below by category.

| | |
|---|---:|
| Attorney Service for Recording the Receiver Order or Delivering Documents to Court Where Required on an Expedited Basis | $ 1,069.23 |
| Photocopies[1] | 128.70 |
| Recording Fees | 259.00 |
| Postage | 372.10 |
| Fees for Obtaining Documents or Searching Public Records | 77.00 |
| Pacer Online Research | 76.00 |
| Westlaw Online Research | 135.10 |
| TOTAL | $2,117.13 |

The bulk of the fees were incurred in connection with the recording of the Receiver Order in the districts where the Receivership Defendants own property and in connection with the expedited notice given to financial institutions about the appointment of the Receiver and the freeze of all assets.

---

[1] On the invoice, copies were charged at $.20 per page. In accordance with the SEC Receivership Billing Guidelines, the Firm is reducing the charge to $.15 per page, for a reduction of $42.90.

The Firm's invoice for the First Application period is attached as Exhibit "B" and contains the information required by the SEC Receivership Billing Instructions.

## IV. THE FEES AND COSTS ARE REASONABLE AND SHOULD BE ALLOWED

It is a general rule that the fees and expenses of a receivership are a charge against the property administered. *See Gaskill v. Gordon*, 27 F.3d 248, 251 (7th Cir. 1994). These expenses include the fees and expenses of the Receiver and of his or her professionals. Decisions about the timing and amount of an award are committed to the sound discretion of the Court. *See SEC v. Elliot*, 953 F.2d 15690, 1577 (11th Cir. 1992).

In determining whether to allow fees, courts consider "the time, labor and skill required . . . in the proper performance of the duties imposed by the court upon the receivers, the fair value of such time, labor and skill measured by conservative business standards, the degree of activity, integrity and dispatch with which the work is conducted and the result obtained." *Coskery v. Roberts & Mander Corp.*, 200 F.2d 150, 154 (3d Cir. 1952). No single factor is dispositive and a reasonable fees is based on all of the circumstances of the receivership.

The Receiver retained the Firm because the scope of the Receiver Order was broad and it was plain that legal services would be required to locate and account for assets, take action necessary and appropriate to assume control over and preserve receivership assets, and to analyze and pursue other avenues for recovery.

The Firm has submitted a detailed invoice that describes the nature of the services rendered and the identity and billing rate of the professionals performing each task. The Firm has endeavored to staff this case

appropriately, utilizing a paralegal when possible and having an associate prepare for and attend the majority of the depositions and to review the bulk of the books and records that needed a lawyer to review them. In addition, the Firm has discounted its standard hourly rates by ten percent.

The services provided by the Firm have been critical to the Receiver's fulfillment of the duties mandated by the Receiver Order. As set forth in greater detail above, the Receiver and the Firm have worked diligently since the Receiver's appointment to (1) investigate, secure, and protect the assets of the receivership estate, (2) investigate transfers to third parties and potential claims related to those transfers, (3) inform the Court and the parties of the Receiver's activities and progress, (4) make recommendations for the efficient and effective administration of the receivership estate, and (5) efficiently and accurately disseminate information to the investors and respond to their inquiries.

The Firm seeks payment of 80% of the fees incurred on an interim basis in recognition of the reality that its work in assisting the Receiver is continuing. Payment of the holdback will be sought at the end of the case.

## V. CONCLUSION

WHEREFORE, the Firm respectfully requests that this Court enter its order:

1. Allowing $63,153.00 in fees and $2,117.13 in expenses to the Firm on an interim basis for the period March 14, 2019, through March 31, 2019;

2. Authorizing the Receiver to pay 80% of the allowed fees and 100% of the allowed expenses from available funds with payment of the amount held back to be permitted at a later date; and

3. For such further relief as the Court may deem necessary and appropriate.

Respectfully submitted,

DATED: May 24, 2019    SMILEY WANG-EKVALL, LLP


By:  */s/ Kyra E. Andrassy*
     KYRA E. ANDRASSY
     Counsel to Robert P. Mosier, Receiver

# DECLARATION OF KYRA E. ANDRASSY

I, Kyra E. Andrassy, declare as follows:

1. I am a partner with Smiley Wang-Ekvall, LLP, proposed general counsel for Robert P. Mosier, the permanent receiver appointed with respect to Kent R.E. Whitney, David Lee Parrish, The Church for the Healthy Self aka CHS Trust, and CHS Asset Management, Inc. I know each of the following facts to be true of my own personal knowledge, except as otherwise stated and, if called as a witness, I could and would competently testify with respect thereto. I make this declaration in support of my firm's first interim fee application (the "Application") for the period from March 14, 2019, through March 31, 2019. Unless otherwise defined in this declaration, all terms defined in the Application are incorporated herein by this reference.

2. In the ordinary course of its business, the Firm keeps a record of all time expended by its professionals and para-professionals in the rendering of professional services on a computerized billing system as follows: At or near the time the professional services are rendered, attorneys and other professionals of the Firm record (a) the description of the nature of the services performed, (b) the duration of the time expended, and (c) the client/matter name or number by either: (1) writing such information on a time sheet, or (2) inputting such information directly into the Firm's computer billing system. For the professionals who record their time using written time sheets, the information contained in the time sheets is then transcribed into the Firm's computer billing system. The Firm's computer billing system keeps a record of all time spent on a client/matter, the professional providing the services and a description of the services rendered. The Firm's computer billing system automatically multiplies the time expended by each professional by the respective professional's billing

1  rate to calculate the amount of the fee.  The Firm conducts its business in
2  reliance on the accuracy of such business records.
3      3.   I have reviewed the Firm's bill for services rendered in
4  connection with its representation of the Receiver in this case, a true and
5  correct copy of which is attached hereto as Exhibit "B."
6      4.   It is the Firm's usual practice to allocate work and assignments in
7  an efficient manner to achieve an effective result.  As demonstrated in the
8  Application, the practice has been followed in this case.
9      5.   At any time a reimbursable charge is incurred on behalf of a
10 client, such as photocopy expenses, telecopy charges, and the like,
11 employees of the Firm keep a written record of the file number for which the
12 charges were expended and a brief description of the nature of the expense.
13 These records are also transcribed into the computer which, together with
14 the records of time spent providing professional services, are transcribed
15 onto monthly bills.  The expenses are billed at the Firm's actual cost.
16     6.   With respect to costs for the reproduction of documents, the
17 photocopy operator must manually enter in the system the coded "file"
18 number and "matter" number assigned to that particular case and the
19 number of photocopies made.  Consistent with the SEC Receivership Billing
20 Instructions which permit a charge of $.15 per page, although the Firm
21 usually charges $.20 per page, it has reduced its charge to $.15 for work on
22 this case and seeks reimbursement of copies in the amount of $128.70.
23     7.   The Firm has no fee sharing arrangement, understanding, or
24 compensation sharing arrangement with any other entity, and no part of the
25 attorneys' fees or expenses awarded to the Firm will be paid to any other
26 entity.

8. I prepared the Application. To the best of my knowledge, information and belief, the facts set forth in the Application are true and correct.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this 24th day of May, 2019, at Costa Mesa, California.

*/s/ Kyra E. Andrassy*
KYRA E. ANDRASSY