**SMILEY WANG-EKVALL, LLP**
Kyra E. Andrassy, State Bar No. 207959
*kandrassy@swelawfirm.com*
Michael L. Simon, State Bar No. 300822
*msimon@swelawfirm.com*
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Telephone: 714 445-1000
Facsimile:  714 445-1002

Counsel for Robert P. Mosier,
Receiver

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>          Plaintiff,<br><br>     v.<br><br>KENT R.E. WHITNEY, DAVID LEE PARRISH, THE CHURCH FOR THE HEALTHY SELF A/K/A CHS TRUST, AND CHS ASSET MANAGEMENT, INC.,<br><br>          Defendants. | Case No. 8:19-CV-499-JVS-KES<br><br>**SECOND INTERIM APPLICATION FOR APPROVAL OF FEES AND COSTS OF SMILEY WANG-EKVALL, GENERAL COUNSEL TO THE RECEIVER**<br><br>DATE:   October 7, 2019<br>TIME:    1:30 p.m.<br>CTRM:  10C<br>JUDGE:  Hon. James Selna |

**TO THE HONORABLE JAMES SELNA, UNITED STATES DISTRICT JUDGE, AND THE PARTIES TO THIS ACTION:**

Smiley Wang-Ekvall, LLP (the "Firm"), general counsel to Robert P. Mosier, the permanent receiver (the "Receiver") appointed by the Court with respect to Kent R.E. Whitney, David Lee Parrish, The Church for the Healthy Self aka CHS Trust, and CHS Asset Management, Inc. (together, the "Receivership Defendants"), submits its second interim fee application for the period from April 1, 2019, through June 30, 2019 (the "Second Application Period"), as required by the *Order Appointing Receiver* (the

"Receiver Order").  Through this application, the Firm seeks interim approval of $82,943.55 in fees and $3,061.72 in expenses, and an order authorizing the Receiver to pay, on an interim basis, 80% of the fees and 100% of the expenses incurred.  The Firm shared this application with the Securities and Exchange Commission ("SEC") prior to its filing with the Court and is informed that the SEC has no objection to the relief sought by the Firm.

## I. **INTRODUCTION**

This equity receivership involves an investment fraud perpetrated by the Receivership Defendants that is the subject of the complaint filed by the SEC.  The Court appointed the Receiver on a permanent basis on March 14, 2019, the same day that it entered a temporary restraining order and asset freeze order.

Since the Receiver's appointment, the Firm has worked closely with the Receiver to identify and collect assets and books and records in order to identify additional assets and potential litigation targets.  This process was made more difficult by the lack of cooperation from the individual Receivership Defendants and many of the key employees.  Despite the challenges, the Receiver has so far identified and collected $231,525 in funds held in the name of the Receivership Defendants and has frozen approximately $744,000 more that he anticipates will become part of the receivership estate.  In addition, the Receiver has reached an agreement with the Office of the United States Attorney for the $5.3 million in funds that it seized prior to the commencement of the case to be distributed to investors through the receivership estate.  The Receiver's investigation is active and ongoing.

During the Second Application Period, the Firm incurred fees of $82,943.55, broken out as follows:

| Category | Hours | Amount |
|---|---|---|
| Asset Investigation and Recovery | 153.10 | $65,446.65 |
| Asset Disposition | 1.80 | $947.70 |
| Case Administration/General Receivership | 34.60 | $14,917.05 |
| Claims Administration/Objection | 3.10 | $1,632.15 |
| Fee Applications | 7.40 | $0.00 |
| Total Fees | 200.00 | $82,943.55 |

The Firm is seeking approval of $82,943.55 in fees and $3,061.72 in costs and payment of 80% of the allowed fees and 100% of the allowed costs from available funds.

## II.   PRIOR AWARDS

By order entered on June 21, 2019, the Court previously allowed the Firm $63,153.00 in fees and $2,117.13 in costs for the period from March 14, 2019, through March 31, 2019 (the "First Application Period") and authorized the payment of 80% of the fees and 100% of the costs. The Firm has received the payment.

## III.   CASE NARRATIVE

During the First Application Period, the immediate focus of the Receiver was on gaining control of the residences of the individual Receivership Defendants and the business locations for the corporate Receivership Defendants and identifying bank accounts and obtaining documents and turnover of funds. During the Second Application Period, these efforts continued. The Firm assisted the Receiver by obtaining documents from financial institutions and other parties, notifying former employees of the receivership and their obligations under the Receiver Order, reviewing records produced by financial institutions to identify other potential assets, and attending depositions of witnesses. Attached hereto as

Exhibit "A" are the Receiver's Schedule of Cash Receipts and Disbursements for the period from April 1, 2019, through June 30, 2019, and the Standardized Fund Account Report for the same period.  These are the same as Exhibit "A" to the Receiver's concurrently-filed fee application.

      At this point, the case remains in its early stages.  The Receiver has made substantial progress calculating the net investments held by each investor and in identifying which accounts are held by employees or friends of employees who may not hold legitimate accounts.  In the next couple of months, the Receiver expects to seek approval of a process for investors to file claims against the receivership estate.  The Receiver and the Firm remain mindful of the financial and emotional distress that the Receivership Defendants inflicted on investors, and intend to administer the estate as expeditiously as they can and, if possible, to make an interim distribution so that investors do not have to wait until the conclusion of the case to receive their pro rata share of funds.

## IV.   SUMMARY OF TASKS PERFORMED AND COSTS INCURRED

### A.   Categories and Description of Work

#### 1.   Asset Analysis and Recovery

[$65,446.65 in fees for 153.10 hours of work; blended hourly rate:  $427.48]

      During the Second Application Period, the bulk of the Firm's services were incurred in connection with asset analysis and recovery, which is to be expected in the first months of a receivership case involving investment fraud.  After the Receiver secured the residential properties and the business locations and all financial institutions were notified of the Receiver's appointment, the Firm turned its efforts towards obtaining documents from the financial institutions, reviewing them, and identifying potential recovery sources.  During the Second Application Period, the Firm

spent quite a bit of time communicating with the financial institutions to obtain turnover of funds in the name of the Receivership Documents and to obtain documents. Once documents were produced, the Firm reviewed them to locate other potential sources of recoveries. The Firm issued subpoenas to third parties for documents and reached out to employees and former employees to interview them, and it also communicated with the attorneys for Mr. Whitney and Mr. Parrish about the whereabouts of certain potential assets of the estate. The Firm also attended depositions conducted by the SEC of key witnesses in order to learn more about how the Receivership Defendants operated and to obtain information about potential assets and witnesses. The Firm has also analyzed how to formally bring certain assets within the scope of the receivership estate and expects that there will be movement forward in that regard during the next interim fee period. Last, the Firm communicated with the Office of the United States Attorney regarding the funds that it seized prior to the commencement of this case and is in the process of stipulating with them to have the funds administered as part of the receivership estate.

### 2. Asset Disposition

[$947.70 in fees for 1.80 hours of work; blended hourly rate: $526.50]

After the Receiver took possession of the personal property at the residential and business locations, he retained Tranzon Asset Strategies to assist him with the liquidation of the personal property. The property that Tranzon was unable to sell by way of an online auction either remained in the Receiver's possession or was returned to the Receiver. Because the cost of administering this property was going to exceed any benefit from a sale of it by another means, the Receiver instructed the Firm to obtain approval of a procedure for disposing of it. The Firm sought approval of the

procedure as part of a motion related to other administrative aspects of this receivership and most of that property has now been abandoned.

### 3. Case Administration

[$14,917.05 in fees for 34.60 hours of work; blended hourly rate: $431.13]

During the Second Application Period, the Firm incurred fees in this category revising a letter to investors to give them information about the receivership, preparing and revising status reports to advise the Court and investors of the Receiver's progress with the administration of the receivership estate, preparing a motion for approval of a variety of professionals, including the Firm, and preparing a liquidation plan that was required to be filed by the Receiver Order. The Firm communicated with counsel for Mr. Whitney and Mr. Parrish regarding the status of their compliance with the Receiver Order. The Firm also worked with the Receiver to identify investors and to determine the fairest way to calculate their net investments. After the Firm learned of a lawsuit filed against Church for the Healthy Self by an investor, the Firm communicated with the plaintiff's counsel to inform him of the stay of that litigation. The Firm spent a fair amount of time communicating with investors about the receivership, both by phone and e-mail, and has not charged the estate for these communications. Similarly, the Firm has worked with Donlin Recano to keep the investor website updated, and has not charged the estate for those efforts since they are more administrative in nature.

### 4. Claims Administration

[$1,632.15 in fees for 3.10 hours of work; blended hourly rate: $526.50]

The Firm incurred a small amount of time in this category working with the Receiver to devise a process for investors to file claims and to prepare a claim form that will be the subject of a motion in the coming months.

### 5.   Fee Applications

[$0.00 in fees for 7.40 hours of work]

The Firm incurred time in this category in connection with its fee application for the First Application Period, which was approved by the Court. As required by the SEC's billing guidelines, the Firm did not charge the estate for the preparation of the fee application.

### B.   Summary of Expenses Requested for Reimbursement

The Firm requests that the Court approve reimbursement of $2,117.13 in out-of-pocket costs. The itemization of the expenses is summarized below by category.

| Category | Amount |
|---|---:|
| Attorney Service for Recording the Receiver Order, Delivering Documents to Court Where Required on an Expedited Basis, and Subpoena Service Fees | $ 829.70 |
| Photocopies[1] | 573.60 |
| Recording Fees | 166.00 |
| Filing Fee | 47.00 |
| Postage | 431.80 |
| Fees for Obtaining Documents or Searching Public Records | 87.00 |
| Pacer Online Research | 125.41 |
| Parking Fee | 3.00 |
| Travel/mileage | 5.93 |
| Westlaw Online Research | 792.28 |
| TOTAL | $3,061.72 |

The Firm's invoice for the Second Application Period is attached as Exhibit "B" and contains the information required by the SEC Receivership Billing Instructions.

---

[1] On the invoice, copies were charged at $.20 per page. In accordance with the SEC Receivership Billing Guidelines, the Firm is reducing the charge to $.15 per page, for a reduction of $42.90.

## V. THE FEES AND COSTS ARE REASONABLE AND SHOULD BE ALLOWED

It is a general rule that the fees and expenses of a receivership are a charge against the property administered. *See Gaskill v. Gordon*, 27 F.3d 248, 251 (7th Cir. 1994). These expenses include the fees and expenses of the Receiver and of his or her professionals. Decisions about the timing and amount of an award are committed to the sound discretion of the Court. *See SEC v. Elliot*, 953 F.2d 15690, 1577 (11th Cir. 1992).

In determining whether to allow fees, courts consider "the time, labor and skill required . . . in the proper performance of the duties imposed by the court upon the receivers, the fair value of such time, labor and skill measured by conservative business standards, the degree of activity, integrity and dispatch with which the work is conducted and the result obtained." *Coskery v. Roberts & Mander Corp.*, 200 F.2d 150, 154 (3d Cir. 1952). No single factor is dispositive and a reasonable fees is based on all of the circumstances of the receivership.

The Receiver retained the Firm because the scope of the Receiver Order was broad and it was plain that legal services would be required to locate and account for assets, take action necessary and appropriate to assume control over and preserve receivership assets, and to analyze and pursue other avenues for recovery.

The Firm has submitted a detailed invoice that describes the nature of the services rendered and the identity and billing rate of the professionals performing each task. The Firm has endeavored to staff this case appropriately, utilizing a paralegal when possible and having an associate prepare for and attend the majority of the depositions and to review the bulk of the books and records that needed a lawyer to review them. In addition, the Firm has discounted its standard hourly rates by ten percent.

The services provided by the Firm have been critical to the Receiver's fulfillment of the duties mandated by the Receiver Order. As set forth in greater detail above, the Receiver and the Firm have worked diligently since the Receiver's appointment to (1) investigate, secure, and protect the assets of the receivership estate, (2) investigate transfers to third parties and potential claims related to those transfers, (3) inform the Court and the parties of the Receiver's activities and progress, (4) make recommendations for the efficient and effective administration of the receivership estate, and (5) efficiently and accurately disseminate information to the investors and respond to their inquiries.

The Firm seeks payment of 80% of the fees incurred on an interim basis in recognition of the reality that its work in assisting the Receiver is continuing. Payment of the holdback will be sought at the end of the case.

## VI.  CONCLUSION

WHEREFORE, the Firm respectfully requests that this Court enter its order:

1. Allowing $82,943.55 in fees and $3,061.72 in expenses to the Firm on an interim basis for the period April 1, 2019, through June 30, 2019;

2. Authorizing the Receiver to pay 80% of the allowed fees and 100% of the allowed expenses from available funds with payment of the amount held back to be permitted at a later date; and

3. For such further relief as the Court may deem necessary and appropriate.

| | |
|---|---|
| | Respectfully submitted, |
| DATED:  09/06/2019 | SMILEY WANG-EKVALL, LLP |
| | By:     */s/ Kyra E. Andrassy* <br> KYRA E. ANDRASSY <br> Counsel to Robert P. Mosier, Receiver |

# **DECLARATION OF KYRA E. ANDRASSY**

I, Kyra E. Andrassy, declare as follows:

1. I am a partner with Smiley Wang-Ekvall, LLP, proposed general counsel for Robert P. Mosier, the permanent receiver appointed with respect to Kent R.E. Whitney, David Lee Parrish, The Church for the Healthy Self aka CHS Trust, and CHS Asset Management, Inc.  I know each of the following facts to be true of my own personal knowledge, except as otherwise stated and, if called as a witness, I could and would competently testify with respect thereto.  I make this declaration in support of my firm's second interim fee application (the "Application") for the period from April 1, 2019, through June 30, 2019.  Unless otherwise defined in this declaration, all terms defined in the Application are incorporated herein by this reference.

2. Attached hereto as Exhibit "A" are the Receiver's Schedule of Cash Receipts and Disbursements for the period from April 1, 2019, through June 30, 2019, and the Standardized Fund Account Report for the same period.  These are the same as Exhibit "A" to the Receiver's concurrently-filed fee application.

3. In the ordinary course of its business, the Firm keeps a record of all time expended by its professionals and para-professionals in the rendering of professional services on a computerized billing system as follows:  At or near the time the professional services are rendered, attorneys and other professionals of the Firm record (a) the description of the nature of the services performed, (b) the duration of the time expended, and (c) the client/matter name or number by either: (1) writing such information on a time sheet, or (2) inputting such information directly into the Firm's computer billing system.  For the professionals who record their time using written time sheets, the information contained in the time sheets is

then transcribed into the Firm's computer billing system. The Firm's computer billing system keeps a record of all time spent on a client/matter, the professional providing the services and a description of the services rendered. The Firm's computer billing system automatically multiplies the time expended by each professional by the respective professional's billing rate to calculate the amount of the fee. The Firm conducts its business in reliance on the accuracy of such business records.

4. I have reviewed the Firm's bill for services rendered in connection with its representation of the Receiver in this case, a true and correct copy of which is attached hereto as Exhibit "B."

5. It is the Firm's usual practice to allocate work and assignments in an efficient manner to achieve an effective result. As demonstrated in the Application, the practice has been followed in this case.

6. At any time a reimbursable charge is incurred on behalf of a client, such as photocopy expenses, telecopy charges, and the like, employees of the Firm keep a written record of the file number for which the charges were expended and a brief description of the nature of the expense. These records are also transcribed into the computer which, together with the records of time spent providing professional services, are transcribed onto monthly bills. The expenses are billed at the Firm's actual cost.

7. With respect to costs for the reproduction of documents, the photocopy operator must manually enter in the system the coded "file" number and "matter" number assigned to that particular case and the number of photocopies made. Consistent with the SEC Receivership Billing Instructions which permit a charge of $.15 per page, although the Firm usually charges $.20 per page, it has reduced its charge to $.15 for work on this case and seeks reimbursement of copies in the amount of $573.60.

8. The Firm has no fee sharing arrangement, understanding, or compensation sharing arrangement with any other entity, and no part of the attorneys' fees or expenses awarded to the Firm will be paid to any other entity.

9. I prepared the Application. To the best of my knowledge, information and belief, the facts set forth in the Application are true and correct.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this 6th day of September, 2019, at Costa Mesa, California.

*/s/ Kyra E. Andrassy*
KYRA E. ANDRASSY

## PROOF OF SERVICE

**STATE OF CALIFORNIA, COUNTY OF ORANGE**

At the time of service, I was over 18 years of age and not a party to this action. I am employed in the County of Orange, State of California. My business address is 3200 Park Center Drive, Suite 250, Costa Mesa, CA 92626.

On **09/06/2019**, I served true copies of the following document(s) described as **SECOND INTERIM APPLICATION FOR APPROVAL OF FEES AND COSTS OF SMILEY WANG-EKVALL, GENERAL COUNSEL TO THE RECEIVER** on the interested parties in this action as follows:

**(X) (BY COURT VIA NOTICE OF ELECTRONIC FILING ("NEF") –** Pursuant to United States District Court, Central District of California, Local Civil Rule 5-3, the foregoing document will be served by the court via NEF and hyperlinked to the document. On **09/06/2019**, I checked the CM/ECF docket for this case and determined that the aforementioned person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated.

**( ) (BY E-MAIL).** By scanning the document(s) and then e-mailing the resultant pdf to the e-mail address indicated above per agreement. Attached to this declaration is a copy of the e-mail transmission.

**( ) (BY FACSIMILE)**. I caused the above-referenced documents to be transmitted to the noted addressee(s) at the fax number as stated. Attached to this declaration is a "TX Confirmation Report" confirming the status of transmission. Executed on _____, at Costa Mesa, California.

**( ) STATE** I declare under the penalty of perjury under the laws of the State of California that the above is true and correct.

**(X) FEDERAL** I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Executed on September 06, 2019, at Costa Mesa, California.

/s/ *Lynnette Garrett*
Lynnette Garrett

# SERVICE LIST

**BY COURT VIA NOTICE OF ELECTRONIC FILING ("NEF):**

- **Kyra E Andrassy**
  kandrassy@swelawfirm.com,jchung@swelawfirm.com,lgarrett@swelawfirm.com,gcruz@swelawfirm.com

- **Lynn M Dean**
  deanl@sec.gov,LAROFiling@sec.gov,longoa@sec.gov,himesm@sec.gov,irwinma@sec.gov,hillan@sec.gov

- **Eliot F Krieger**
  ekrieger@skt.law,alucero@skt.law

- **Robert P Mosier**
  rmosier@mosierco.com

- **Jennifer D Reece**
  reecej@sec.gov,stewartan@sec.gov,justicet@sec.gov,fairchildr@sec.gov

- **Christopher Lih-Wei Wong**
  cwong@SKT.law,alucero@skt.law