1
2
3
4
5
6
7

**SMILEY WANG-EKVALL, LLP**
Kyra E. Andrassy, State Bar No. 207959
*kandrassy@swelawfirm.com*
Michael L. Simon, State Bar No. 300822
*msimon@swelawfirm.com*
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Telephone: 714 445-1000
Facsimile:  714 445-1002

Counsel for Robert P. Mosier,
Receiver

8
9
10

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION

11
12
13
14
15
16
17

SECURITIES AND EXCHANGE
COMMISSION,

                              Plaintiff,

          v.

KENT R.E. WHITNEY, *et al.*,

                              Defendants.

Case No. 8:19-CV-499-JVS-KES

**MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF
MOTION OF RECEIVER, ROBERT
P. MOSIER, FOR ORDER
AUTHORIZING THE RECEIVER
TO MAKE AN INTERIM
DISTRIBUTION FROM THE RES
OF THE CONSTRUCTIVE TRUST
TO NON-INSIDER INVESTORS
WHO TIMELY FILED CLAIMS
WITH THE RECEIVER, USING THE
RISING TIDE METHODOLOGY,
AND FOR RELATED RELIEF;
DECLARATIONS OF ROBERT P.
MOSIER AND JIM LESIEUR IN
SUPPORT THEREOF**

[Notice of Motion and Motion
Submitted Concurrently Herewith]

DATE:   March 8, 2021
TIME:   1:30 p.m.
CTRM:  10C
JUDGE:  Hon. James V. Selna

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

# **TABLE OF CONTENTS**

**Page**

I.      INTRODUCTION ................................................................. 1

II.     BACKGROUND FACTS ....................................................... 3

    A.      The Appointment of the Receiver ............................... 3

    B.      The Receiver's Findings Have Confirmed the Material Allegations of the SEC's Amended Complaint .......................... 5

    C.      Status of Resolution of the SEC's Claims and the Plea Agreements with Whitney and Parrish ........................................ 6

    D.      Investors Have Submitted Claims and the Receiver Has Resolved Nearly All Discrepancies and Disputes with the Non-Insider Investors ................................................................. 8

III.    LEGAL ARGUMENT .......................................................... 12

    A.      The Pooling of Assets and Liabilities Is Appropriate ................ 12

    B.      The Receiver Requests Authority to Make an Interim Distribution of the Constructive Trust *Res* to the Non-Insider Investors Who Timely Filed Claims, Utilizing the Rising Tide Method to Calculate Distributions .......................... 14

        1.      The Res of the Constructive Trust Is for the Benefit of the Investors in the Receivership Entities and the Costs of Administration of the Receivership Estates, Not For Any Creditors of the Receivership Defendants ................................................................. 15

        2.      The Receiver Believes the Use of the Rising Tide Method Is the Most Equitable Method of Distribution ....... 16

        3.      Where Investors Have More Than One Account, the Receiver Proposes to Consolidate the Accounts for Purposes of Calculating the Distribution to the Investor ................................................................. 18

IV.     CONCLUSION ................................................................. 19

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

1

# TABLE OF AUTHORITIES

**Page**

## CASES

*Commodity Futures Trading Comm'n v. Equity Fin. Grp., LLC*, 2005 WL 2143975, at *24 (D.N.J. 2005) .............................................. 16, 19

*Fed. Trade Comm'n v. Ameridebt, Inc.*, 373 F.Supp.2d 558, 565 (D. Md. 2005) ........................................................................ 15

*Fed. Trade Comm'n v. Crittenden*, 823 F.Supp. 699, 703 (C.D. Cal. 1993) .............................................................................. 15

*Futures Trading Comm'n v. Lake Shore Asset Mgmt.*, 2010 WL 960362, at *9-10 (N.D. Ill. 2010) ........................................ 16

*Sec. & Exch. Comm'n v. Aequitas Mgmt., LLC*, 2020 WL 1528249 at *7 (D. Or. 2020) .............................................................. 13, 19

*Sec. & Exch. Comm'n v. Byers*, 637 F. Supp. 2d 166, 180-81 (S.D.N.Y. 2009) ...................................................................... 13

*Sec. & Exch. Comm'n v. Capital Consultants, LLC*, 397 F.3d 733, 738 (9th Cir, 2005) .................................................... 12

*Sec. & Exch. Comm'n v. Hardy*, 803 F.2d 1034 (9th Cir. 1986) ............. 12, 14

*Sec. & Exch. Comm'n v. Sunwest Mgmt., Inc.*, 2009 WL 3245879 at *7 (D. Or. 2009) ........................................................ 13

*Sec. & Exch. Comm'n v. Wealth Mgmt. LLC*, 628 F.3d 323, 332-33 (7th Cir. 2010) ......................................................... 14

*See Sec. & Exch. Comm'n v. Credit Bancorp, Ltd.*, 290 F.3d 80, 91 (2d Cir. 2002) ........................................................... 14

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

**TO THE HONORABLE JAMES V. SELNA, UNITED STATES DISTRICT JUDGE, AND ALL PARTIES AND THEIR COUNSEL OF RECORD**:

## I.    <u>INTRODUCTION</u>

As the Court-appointed permanent Receiver for The Church for the Healthy Self aka CHS Trust ("CHS Trust"), CHS Asset Management, Inc. ("CAM"), iCare Financial Solution, Inc. ("iCare" and, together with CHS Trust and CAM, the "Receivership Entities"), Kent R.E. Whitney, David Lee Parrish, and Ha Ngoc T. Nguyen (together, the Receivership Entities, Whitney, Parrish, and Nguyen are referred to as the "Receivership Defendants" and their receivership estates are referred to as the "Receivership Estates"), the Receiver's duty is to marshal, care for, and preserve the assets of the Receivership Defendants for the benefit of investors.  Twenty-two months into his administration of the Receivership Estates, all claims have been submitted and the Receiver has consensually resolved nearly all disputes with non-insiders about the amount of their claims.  Of 500 accounts, the Receiver received 450 claims.  Assuming that a handful of disputed claims are allowed in the amounts reflected in the books and records of the Receivership Entities, the total net investment of non-insider investors is expected to be $26,450,497.  As a result of the efforts of the Receiver and his team, only 50 accounts did not return claim forms and of those 50 accounts, 18 of them had already received payouts on their original investments of more than 30%.  The net invested balance of the non-responsive accounts is only $787,257, with one investor accounting for approximately $300,000 of that amount.

In connection with its approval of the claims procedure, the Court entered an order that imposed a constructive trust over the assets of the Receivership Defendants for the benefit of the investors in the Receivership

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

1

SMILEY WANG-EKVALL, LLP

3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

1   Entities, and although probably unnecessary given the imposition of the

2   constructive trust, subordinated the claims of non-tax unsecured creditors to

3   the claims of the investors.  Through this Motion, the Receiver seeks

4   clarification that the *res* of the constructive trust may only be used to pay for

5   the costs of administration of the Receivership Estates and to make

6   distributions to investors, to the exclusion of all creditors of the Receivership

7   Defendants, including taxing authorities.

8          The Receiver is holding $5,437,624, $5,186,716 of which is

9   attributable to funds that were seized by the government prior to the

10   commencement of this case pursuant to seizure warrants (the "Seized

11   Funds").  In turning those funds over to the Receiver, the U.S. Attorney's

12   Office required that they be distributed only to investors or for the costs of

13   the administration of the Receivership Estates.  Given that the claim

14   procedure process is now complete, the Receiver believes that it is

15   appropriate to use $4,408,708 of the Seized Funds to make an interim

16   distribution to non-insider investors so that they will each have received 22%

17   of their original investment back.  Investors who have already received more

18   than 22% of their investment back will not participate in the interim

19   distribution, and investors who received distributions pre-receivership of less

20   than 22% will receive a smaller distribution than other investors so that all

21   non-insider investors will have received 22% of their original amount

22   invested back.  There were approximately 56 claims that did not reconcile

23   with the books and records.  The Receiver has resolved many of these and

24   is in the process of attempting to resolve the remaining 6 disputed claims.  If

25   the disparities cannot be resolved through this informal process, then the

26   Receiver will seek a judicial resolution of the disputes.  There are also five

27   investors who the Receiver believes are insiders or family members or

28   friends of insiders and who would otherwise participate in this interim

1   distribution because they have not yet received 22% of their alleged

2   investment back.  With respect to these disputed claims and these five

3   potential insider claims, the Receiver will reserve the distribution they would

4   otherwise receive on account of their claim pending resolution of the amount

5   of their claim and, for the five potential insiders, resolution of the issue of

6   whether they are entitled to receive any distribution.  By handling the

7   disputed claims and the potential insider claims in this manner, the Receiver

8   can ensure that the vast majority of the investors start to receive some of

9   their investment back now rather than being forced to wait while issues

10  affecting a small number of other investors are resolved.

11          The SEC has no objection to the relief sought in the Motion.

12

13  II.   **BACKGROUND FACTS**

14        A.   **The Appointment of the Receiver**

15          On March 13, 2019, the Securities and Exchange Commission ("SEC")

16  filed a civil complaint against CHS Trust, CAM, Whitney, and Parrish

17  (together, the "Original Defendants") and sought the appointment of a

18  receiver.  The complaint alleged that Whitney and Parrish, who claimed to

19  be ordained ministers, were operating a Ponzi scheme through their

20  purported church, CHS, and its related entity, CAM.  It alleged that the

21  Original Defendants were using radio and television advertisements to target

22  the Vietnamese community, falsely promising annual guaranteed returns of

23  12% and claiming the investments were insured.  The complaint alleged that

24  the Original Defendants told investors that CHS could generate high returns

25  with minimal to no risk by investing in the reinsurance industry and promised

26  that they would have access to their funds for major purchases.  A copy of

27  the complaint is attached as Exhibit "1."  Based on the evidence compiled by

28  the SEC that these promises were false and that the Original Defendants

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

1   were instead operating a Ponzi scheme, the Court granted an ex parte

2   temporary restraining order and appointed Robert P. Mosier as the Receiver

3   on March 14, 2019.  Parrish and Whitney stipulated to the entry of a

4   preliminary injunction and to the appointment of the Receiver and have since

5   stipulated to entry of a judgment against them, with penalties and

6   disgorgement in amounts remaining to be determined.  Copies of the partial

7   judgments are attached as Exhibits "2" and "3."

8       In September 2019, the SEC amended the complaint to add a number

9   of defendants, including iCare and Nguyen, and sought to expand the scope

10  of the receivership estates to include iCare and Nguyen.  The Court granted

11  that relief by order entered on September 12, 2019.  Nguyen has filed an

12  answer that contests many of the allegations in the amended complaint.

13      As detailed in the SEC's application filed on September 11, 2019 to

14  expand the scope of the receivership estates, iCare and Nguyen were

15  named as defendants in the amended complaint and added to the

16  receivership estates because of their relationship with CHS and Whitney.

17  Whitney formed CHS in late 2014.  In 2015, Whitney partnered with Nguyen,

18  who at the time sold annuities and other insurance products and was

19  introduced to Whitney by his father.  Nguyen and Whitney solicited investors

20  through both iCare and CHS and conducted a small amount of trades in

21  commodity accounts that Nguyen set up.  Relevant deposition testimony

22  from Nguyen is attached as Exhibit "4."  In 2017, Whitney moved funds from

23  an iCare investment account to one that he controlled.  Although Nguyen

24  apparently had not authorized that transfer, she eventually sent the iCare

25  investors a letter informing them that effective March 31, 2018, iCare and

26  CHS had merged.  A copy of this letter is attached as Exhibit "5."

27  Subsequent to this merger, iCare and Nguyen continued to solicit

28  investments, either depositing investor funds into iCare's account and then

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

1  writing checks payable to CHS or depositing checks directly into CHS's bank

2  account.  CAM was set up in 2017 to accept deposits from brokerage

3  accounts, and after depositing checks from brokerage firms remitting funds

4  on behalf of investors, it would transfer the funds to CHS's bank account.

5  Money flowed freely between the three Receivership Entities.  Most (and in

6  some cases all) of the funds coming into the individual Receivership

7  Defendants' accounts are traceable to the Receivership Entities, and all of

8  the funds coming into the Receivership Entities are traceable to investors.

9      **B.**     **The Receiver's Findings Have Confirmed the Material**

10      **Allegations of the SEC's Amended Complaint**

11        As detailed in connection with the Receiver's declaration in support of

12  the SEC's motion to expand the scope of the Receivership Estates, the data

13  confirmed the SEC's allegations and established that between 2014 and

14  March 14, 2019, iCare and CHS together raised at least $33.4 million from

15  approximately 500 non-insider investors, heavily targeting the Vietnamese

16  communities in San Jose, California, and Orange County, California.  Using

17  funds obtained from other investors, the Receivership Entities returned

18  approximately $6.1 million to investors, leaving approximately $27.3 million

19  in net investments from non-insiders.  Thus, this was a Ponzi scheme,

20  although most of the remaining $27.3 million in net investments was

21  dissipated by the individual Receivership Defendants to fund their lavish

22  lifestyles, including traveling, purchasing designer clothing and jewelry,

23  renting luxury cars and riding in limousines, and eating out regularly at high-

24  end restaurants.[1]  What was left was seized by the federal government just

25  prior to the SEC's commencement of this case or collected by the Receiver.

26

27  _____

28      [1] These figures do not take into account the investments some investors made in cash, some of which was deposited into bank accounts but an undetermined amount of which is unaccounted for.

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

To date, the Receiver has collected approximately $6.3 million.  Of this amount, $5,186,716 is from the Seized Funds, which are from CHS's account at Prestige Community Credit Union and CAM's account at Bank of America.  In stipulating to having the Receiver take possession of the seized funds, the United States required that the funds be used to make distributions to the defrauded investors and to pay for the costs of administration of the Receivership Estates, to the exclusion of any creditors of the Receivership Defendants.  Copies of the stipulations and orders are attached as Exhibits "6" and "7."  After payment of expenses of the Receivership Estates, the Receiver is currently holding approximately $5.44 million.  The Receiver is exploring the merits of litigation to increase the size of the Receivership Estates through the pursuit of various litigation claims, two of which may involve the sale of prospective real estate in San Jose, California.[2]

**C.     Status of Resolution of the SEC's Claims and the Plea Agreements with Whitney and Parrish**

Early on in the case, CHS, CAM, Parrish and Whitney stipulated to the preliminary injunction and the appointment of the Receiver.  As mentioned above, in June 2019, Parrish and Whitney consented to the entry of partial judgments against them, agreeing that they would disgorge their ill-gotten gains, with the amount of the disgorgement and any civil penalties to be determined upon motion of the SEC.  In connection with the motion to be filed by the SEC, both Parrish and Whitney agreed, among other things, (1) that they will not argue that they did not violate federal securities laws, (2)

---

[2] There are two fraudulent conveyance actions pending involving properties transferred by Ha Nguyen just before being added as a defendant in this action.  One of these actions has settled and will result in the Receiver receiving the real property and then selling it.  The other action is in the early stages of litigation. If the Receiver is able to sell both properties, he estimates that their sale will yield approximately $1 million for the Receivership Estates.

that they will not challenge the entry of the partial judgments that they agreed to, and (3) that for purposes of the motion, the complaint's allegations would be taken as true.  Copies of the partial judgments are attached as Exhibits "2" and "3."  The litigation remains ongoing with respect to Nguyen.

In 2020, the Office of the United States Attorney charged Whitney with mail fraud and tax fraud and charged Parrish with conspiracy.  Whitney and Parrish each signed a plea agreement that was filed with the Court on the same day that the Information against each was filed.  Under Whitney's plea agreement, Whitney admitted that starting in late 2014 and continuing to April 2019, he or people acting at his direction, claimed:

> (1) that CHS guaranteed an annual rate of return of 12%; (2) guaranteed return of principal with no risk because the investments were backed by the FDIC and SIPC (Securities Investor Protection Program [sic]); (3) that in the past five years the worst return CHS realized was a 1.5% profit for the month of January 2015; (5) that the traders used by CHS had not lost money in 15 years; and (6) that CHS was audited by KPMG.

*Plea Agreement* at 9, attached as Exhibit "8."  Whitney admitted in the plea agreement that these statements were false and that he knew that they were false when they were made.  Parrish admitted making these claims while knowing they were false.  *Plea Agreement* at 10, attached as Exhibit "9."  Whitney further admitted the following:

> In reliance on the statements made by CHS representatives during television appearances, live seminars, and sales calls from CHS employees, victims sent more than $33 million to CHS from 2014 to 2019.  As part of the scheme, defendant directed that monthly statements of account be sent to victims that contained false reports of investment returns to lull victims into believing their money had been invested and was generating returns consistent with the claims made by CHS representatives.

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

1    *Id.* at 10.  Whitney also admitted to filing a false tax return by not

2    reporting income he received from CHS.  He admitted that by underreporting

3    his income in 2018, the tax loss to the federal government in that year was

4    $130,808.

5    **D.**     **Investors Have Submitted Claims and the Receiver Has**

6            **Resolved Nearly All Discrepancies and Disputes with the**

7            **Non-Insider Investors**

8            In Spring 2020, the Receiver obtained Court approval of his proposed

9    claims procedure process.  In connection with that motion, the Court also

10   granted the Receiver's request to impose a constructive trust over the assets

11   of the Receivership Estates for the benefit of the investors in the

12   Receivership Entities, and subordinated unsecured non-tax claims (i.e.,

13   claims of trade creditors) to the claims of investors.  A copy of the order is

14   attached as Exhibit "10."

15           In late April 2020, the Receiver mailed claim packages to each

16   investor with detailed instructions, including that the claim forms had to be

17   received by the Receiver within ninety days in order to be entitled to a

18   distribution.  The deadline for the submission of the claims was July 31,

19   2020.  In addition, the Receiver published notice of the claims bar deadline

20   in the *Orange County Register* and the *San Jose Mercury News*.  Copies of

21   the proofs of publication are attached as Exhibits "11" and "12."

22           The Receiver received 443 claims forms from non-insider investors,

23   representing 90% of the non-insider accounts.  As set forth in the attached

24   declaration of Jim LeSieur, the Receiver and his team made significant

25   efforts to get claim forms from the remaining 10% of the accounts, sending

26   emails, a follow up letter, making phone calls, and even in one case driving

27   to the investor's address.  Of the 50 accounts for which the Receiver did not

28   receive a claim form, 18 had already received payouts in excess of 30%,

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

1  and the total net investment of the non-responsive accounts was $787,257,

2  with one investor accounting for approximately $300,000 of that total.  After

3  reviewing the claims and assuming that the Court approves the Receiver's

4  request to consolidate multiple accounts held by single investors and that

5  the claims are allowed in amounts consistent with the books and records of

6  the Receivership Entities as reviewed by the Receiver and his team, the

7  total net investment for non-insiders is expected to be $26,450,497.  There

8  are also claims filed by potential insiders asserting a net investment of

9  $2,945,342.

10         As claims came in, the Receiver was able to resolve most

11  discrepancies between the books and records of the Receivership Estates

12  and the records of the non-insider investors.  At present, the Receiver has

13  identified 6 non-insider claims that remain disputed, either because the

14  disputed claims did not consolidate open and closed accounts and take into

15  account distributions received on closed accounts or because a further

16  review of the books and records revealed additional distributions that were

17  previously not taken into account.  The Receiver continues to attempt to

18  consensually resolve these disputed claims with the affected investors,

19  although the disputes will be presented to the Court for judicial resolution if

20  these discussions are not successful and resolution of the dispute would

21  result in a distribution.[3]  In the meantime, for purposes of calculating the

22  interim distribution, the Receiver will assume that the disputed claims are

23  allowed in amounts consistent with the Receivership Entities' books and

24  records as verified by the Receiver and reserve the distribution that would

25  otherwise be made pending informal or formal resolution of the disputes.

26

27         [3] The Receiver has not incurred fees resolving disputes with investors who agree that regardless of the amount of their net investment (i.e., whether their number is used or the Receiver's number is used), they would not participate in this interim distribution because pre-receivership, they already received distributions in excess of 22% of the amount invested.

28

1  The disputed claims (the "Disputed Claims") are identified by account

2  number and claim number on the spreadsheet that is attached as Exhibit

3  "13."  Investors holding Disputed Claims are being served with this

4  Memorandum in addition to the notice of motion and the motion.

5      In addition, the Receiver has also not resolved discrepancies with the

6  claims that were filed by parties who the Receiver believes should be treated

7  as insiders.  The Receiver believes that employees of the Receivership

8  Entities, friends and family members of employees of the Receivership

9  Entities, and recipients of suspicious payments should not receive a

10  distribution until the Receiver can verify the legitimacy of their claims and

11  make sure there are no defenses to them or the Court resolves the disputes

12  about the claims.  Although a number of parties the Receiver would place

13  into this category filed claims, there are only five claims that were filed by

14  alleged insiders who, absent this designation, would participate in the interim

15  distribution.[4]  The claims were filed by Joe Cini, Arlene Whitney, Son Kim

16  Le, Anh Le, and Kathleen Domagalski (together, the "Potential Insider

17  Claims").  The other potential insiders who filed claims have already

18  received more than 22% of their alleged investment, so no action is required

19  with respect to those claims at this time and the Receiver reserves the right

20  to object to these claims at a later date if their allowance becomes a ripe

21  issue.

22      For the reasons that follow and based on the same principles as with

23  the Disputed Claims discussed above, the Receiver believes that the

24  Potential Insider Claims should be included when calculating the

25

26  [4] A handful of other parties who the Receiver believes are insiders or should be treated as such or who
had a material role in the investment fraud also filed claims, but they have already received distributions on
27  account of their alleged investments in excess of the amount proposed as an interim distribution, so the
Receiver is not yet seeking to resolve the disputes regarding their claims or their entitlement to participate
28  in future distributions.  The Receiver reserves all legal and equitable grounds for objecting to those claims.

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

distributions, with the amounts that would otherwise be paid to them to be held in reserve pending resolution of the concerns of the Receiver, either consensually or by Court order.  Detailed information about the Potential Insider Claims is in the table below:

| Potential Insider | Description of Asserted Claim | Basis for Treating as a Potential Insider with a Disputed Claim |
|---|---|---|
| Joe Cini | Asserts he invested $69,000 | Mr. Cini is believed to be a friend or colleague of Parrish and/or Whitney from Chicago.  The Receiver has not located any deposits and it appears that Mr. Cini contends that he "rolled over" the value of an interest he allegedly held in Maximus Worldwide, a company associated with Parrish and/or Whitney |
| Arlene Whitney | Asserts that she invested $435,127.88 and received $15,646 | She is Whitney's mother.  The Receiver has been unable to locate any funds coming into the Receivership Entities from Arlene Whitney and, in any event she received at least $48,000 from CHS. |
| Son Kim Le | Asserts that he invested $1,000,000 ($400,000 in checks and $600,000 in cash) and received $60,000. | Ha Nguyen testified that Son Kim Le was her fiancé. The Receiver has not been able to verify that Mr. Le deposited the amount claimed and is investigating whether Mr. Le received funds from Ha Nguyen or iCare traceable to investors. At a minimum, it appears that he directly or indirectly received at least $175,000. |
| Anh Le | Claims that she is owed $300,000 | Anh Le is Son Kim Le's mother.  The Receiver has thus far been unable to verify that she invested this full amount and is still investigating whether she received indirect payments from funds that are traceable to investors. |
| Kathleen Domagalski | She asserts that she invested $300,000 and received $41,412.78, leaving a net investment of $258,587.22. | Ms. Domagalski was an employee of CHS who worked at the reception desk in Orange County and whose sister was the bookkeeper for the Receivership Entities and a signatory on the main bank account.  Our investigation to date has revealed that Ms. Domagalski withdrew or had payments made on her behalf of more than $392,000, including at least $50,000 in payments that appear to have been made for the benefit of her children. |

SMILEY WANG-EKVALL, LLP

3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

1   Pending the outcome of these investigations and further Court order,
2   the Receiver will hold the money that would otherwise be distributed on
3   account of the Potential Insider Claims pending further Court order.  The
4   amount that will be set aside is $345,849 and is in addition to the $4,408,708
5   that the Receiver proposes to distribute to non-insiders.

6

7   **III.   LEGAL ARGUMENT**

8   As a preliminary matter, the Receiver notes that it is well-settled that
9   district courts supervising federal equity receiverships have broad discretion
10  to adopt appropriate procedures to administer the assets of and claims
11  against a receivership estate.  *See Sec. & Exch. Comm'n v. Capital*
12  *Consultants, LLC*, 397 F.3d 733, 738 (9th Cir, 2005); *Sec. & Exch. Comm'n*
13  *v. Hardy*, 803 F.2d 1034 (9th Cir. 1986).

> A district court's power to supervise an equity
> receivership and to determine the appropriate action
> to be taken in the administration of the receivership
> is extremely broad.  The district court has broad
> powers and wide discretion to determine the
> appropriate relief in an equity receivership.  The
> basis for this broad deference to the district court's
> supervisory role in equity receiverships arises out of
> the fact that most receiverships involve multiple
> parties and complex transactions.

*Capital Consultants*, 397 F.3d at 738 (citations omitted).  With this standard
in mind, the Receiver turns to the particulars of the relief he is seeking in the
Motion.

**A.   The Pooling of Assets and Liabilities Is Appropriate**

At present, there are technically six different receivership estates:  one
for each of the Receivership Defendants.  However, the Receiver believes
that it is appropriate to pool their assets and liabilities (i.e., the investor
claims) for purposes of making distributions to the investors.

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

1   For purposes of distribution in an equity receivership, courts have
2   approved the pooling of assets of the receivership estates of different people
3   and entities where they are part of a "unified scheme to defraud." *Sec. &*
4   *Exch. Comm'n v. Byers*, 637 F. Supp. 2d 166, 180-81 (S.D.N.Y. 2009); *Sec.*
5   *& Exch. Comm'n v. Aequitas Mgmt., LLC*, 2020 WL 1528249 at *7 (D. Or.
6   2020); *Sec. & Exch. Comm'n v. Sunwest Mgmt., Inc.*, 2009 WL 3245879 at
7   *7 (D. Or. 2009).  Here, if an investor was based in San Jose, until iCare
8   "merged" into CHS, their money was likely collected by iCare, which would
9   then transfer the money to CHS by check.  If an investor was investing from
10  a qualified retirement fund, then its investment came in through CAM, which
11  would then transfer the investment to CHS.  If an investor was based in
12  Southern California, then their investment was likely made directly with CHS.
13  Under any scenario, the money traceable to investors that was not
14  dissipated along the way ended up in CHS's bank account at Prestige
15  Community Credit Union in Dallas, Texas.  CHS then made transfers that
16  ultimately benefitted the three individual defendants and which will be the
17  subject of disgorgement judgments or fraudulent transfer judgments.  During
18  the relevant time period, nearly all of the money received by the three
19  individual defendants was derived from their fraudulent conduct in
20  connection with the Receivership Entities.[5]  Because the Receivership
21  Defendants were involved in a unified fraudulent scheme, the Receiver
22  believes that the most equitable manner of distributing the funds he has
23  collected and will continue to collect is to pool the funds he collects from the
24  liquidation of assets, pursuit of litigation, or collection of accounts in order to
25
26
27      [5] This analysis does not take into account the investments some investors made in cash that was not deposited into bank accounts.  The Receiver has been unable to track how the cash that was not deposited into bank accounts was utilized.
28

1   make distributions to the investors who were defrauded without regard to

2   which entity initially received the funds.

3        In pooling the assets to make distributions to the investors, the

4   Receiver is not seeking to substantively consolidate the Receivership

5   Defendants.  Instead, he is attempting to be as fair as possible in making

6   distributions to the investors since their money was ultimately commingled.

7   Based on the wide latitude afforded to courts in approving distribution plans

8   in order to achieve equity, the Receiver believes that this relief is

9   appropriate.

10  **B.     The Receiver Requests Authority to Make an Interim**

11  **Distribution of the Constructive Trust *Res* to the Non-Insider**

12  **Investors Who Timely Filed Claims, Utilizing the Rising Tide**

13  **Method to Calculate Distributions**

14       Unlike a bankruptcy case, there is no statutory mandate for how

15  assets in a receivership should be distributed.  It is therefore within a

16  receiver's discretion to propose a plan of distribution that classifies claims

17  into different classes for different treatment based on equitable notions.  *See*

18  *Sec. & Exch. Comm'n v. Credit Bancorp, Ltd.*, 290 F.3d 80, 91 (2d Cir.

19  2002); *see generally Hardy*, 803 F.2d 1037-39.  Applying these broad

20  discretionary powers, courts tasked with supervising the administration of a

21  receivership in an investment fraud case may authorize any distribution

22  protocol for receivership assets on account of allowed claims that is fair and

23  reasonable.  *See Sec. & Exch. Comm'n v. Wealth Mgmt. LLC*, 628 F.3d 323,

24  332-33 (7th Cir. 2010).  As set forth above, the Court has wide latitude in

25  approving a distribution plan for a federal equity receivership.  The Receiver

26  believes that it is appropriate to make an interim distribution at this time

27  because the claim submission process is complete and the funds that the

28  Receiver proposes to distribute are traceable to the Seized Funds, which are

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 ● Fax 714 445-1002

1   required to be used for distributions to investors and for the costs of

2   administration of the Receivership Estates.  The Receiver does not foresee

3   any scenario under which investors will be paid in full.

4        1.   **The Res of the Constructive Trust Is for the Benefit of**

5           **the Investors in the Receivership Entities and the**

6           **Costs of Administration of the Receivership Estates,**

7           **Not For Any Creditors of the Receivership Defendants**

8   As the Court is aware, SEC receiverships are equitable proceedings

9   intended to redistribute the proceeds of a fraud to the victims of the

10   underlying entity.  In cases where all, or nearly all, of the funds coming into

11   the wrongdoer's accounts are traceable to defrauded investors, then both

12   federal equitable principles and California law support the imposition of a

13   constructive trust over the assets of the receivership for the benefit of the

14   investors and the costs of administration of the receivership, to the exclusion

15   of the claims of all creditors, including taxing authorities.  *See Fed. Trade*

16   *Comm'n v. Crittenden*, 823 F.Supp. 699, 703 (C.D. Cal. 1993) (holding that

17   because of the imposition of a constructive trust over the assets of the

18   receivership estate, the funds belonged to the injured customers and not to

19   the wrongdoer and therefore could not be subject to any tax lien related to

20   the wrongdoer); *Fed. Trade Comm'n v. Ameridebt, Inc.*, 373 F.Supp.2d 558,

21   565 (D. Md. 2005) (holding that under the doctrine of constructive trust,

22   "even if the IRS has placed liens on Defendants' assets, those liens would

23   not attach to property that was wrongfully obtained from consumers . . . .").

24   Under these authorities, the Receiver requests a Court order clarifying

25   that he may use the *res* of the constructive trust previously imposed by the

26   Court for the sole purpose of making distributions to investors holding

27   allowed claims and to pay for the costs of administration of the Receivership

28   Estates.  The effect of this will be that all creditors of the Receivership

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

1   Defendants, including taxing authorities, will be excluded from any
2   distribution.  However, since the *res* of the trust is almost entirely traceable
3   to the investors' funds and there was not a legitimate business being
4   operated, that result is not inequitable.  All potential creditors, including
5   taxing authorities, are being served with the Motion.

   ## 2.  The Receiver Believes the Use of the Rising Tide Method Is the Most Equitable Method of Distribution

8        The two most common methods of making distributions in federal
9   equity receiverships are the net investment method and the rising tide
10  method.  Under the net investment method, each investor would receive a
11  pro rata distribution based on the investor's net loss at the end of the Ponzi
12  scheme.  This approach does not even the playing field between investors
13  who received distributions during the Ponzi scheme and investors who did
14  not.  Instead, because it does not account for withdrawals or payments
15  received during the Ponzi scheme, it increases the rate of return for
16  investors who received money during the Ponzi scheme at the expense of
17  the investors who did not.  The rising tide method seeks to solve this
18  dilemma.  It enables the Receiver to include an investor's prior withdrawals
19  as part of that investor's pro rata distribution, until that investor has received
20  the same percentage as the other investors.  The result is that it prevents an
21  investor who previously received withdrawals from benefitting at the
22  expense of investors who did not.  *See Commodity Futures Trading Comm'n*
23  *v. Lake Shore Asset Mgmt.*, 2010 WL 960362, at *9-10 (N.D. Ill. 2010);
24  *Commodity Futures Trading Comm'n v. Equity Fin. Grp., LLC*, 2005 WL
25  2143975, at *24 (D.N.J. 2005).
26        At this time, the Receiver seeks authority to distribute $4,408,708 of
27  the funds that he is holding to non-insider investors holding allowed claims,
28  with an additional $345,849 to be set aside if it is determined that the five

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000  •  Fax 714 445-1002

2834821.9

16

MEMORANDUM OF POINTS
AND AUTHORITIES

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

potential insider investors should participate in the distribution.  If the Receiver were to use the net investment method, then the Receiver would make a pro rata distribution to all of the investors holding allowed claims that would result in all of them receiving an amount equal to 16.8% of their claims.[6]  Investors who received withdrawals during the Ponzi scheme would fare better than investors who did not, because they would be able to keep the funds that they received and receive another 16.8% of their net investment from the Receiver.  Using the rising tide methodology eliminates this disparity.  Under this methodology, each investor who has not yet received a distribution on account of their investment will receive a return of 22% of the amount that they invested.  Investors who previously received a partial return prior to the commencement of the receivership that was less than 22% of the amount they invested will receive an amount that will bring their total distribution to 22%.  Investors who have already received 22% of their amount invested will not participate in this distribution.  Thus, through the rising tide method, the Receiver's goal is to equalize the distributions between investors to the greatest extent possible.

As stated above, the Receiver seeks to make an interim distribution of $4,408,708 of the *res* of the constructive trust to investors who timely filed claims.  The holders of Disputed Claims, which are identified on Exhibit "13," will have the funds that would otherwise be paid to them set aside until the dispute regarding the amount of their claim is resolved.  In addition, the Receiver proposes to set aside an additional $345,849 that would otherwise be paid on account of the Potential Insider Claims pending a further Court order.  Attached as Exhibit "14" is a spreadsheet with the timely-filed claims, the allowed amount of the claim, any withdrawals received during the

---

[6] This is calculated as the amount proposed to be distributed to non-insider investors divided by their estimated net investment, or $4,443,075 divided by $26,450,497.

17

MEMORANDUM OF POINTS AND AUTHORITIES

scheme, and the proposed amount to be distributed in this first distribution. The investor names and addresses are not included in order to protect their privacy. Instead, the only identifying information is their account number and the claim number. Investor claim numbers are on the mailing label affixed to the envelopes with the pleadings being served on investors. Investors with questions about their proposed interim distribution can call or email the Receiver's office for assistance.

### 3. Where Investors Have More Than One Account, the Receiver Proposes to Consolidate the Accounts for Purposes of Calculating the Distribution to the Investor

A small percentage of investors had more than one account with the Receivership Entities. Often, investors with multiple accounts received one or more distributions from at least one of their accounts but no distributions from the other(s). For example, assume that there is an investor who had one account where they had received 50% of their original $100,000 investment and another account into which they invested another $100,000 and received no distributions. If the accounts are consolidated, then the investor would not participate in this interim distribution because they have already received $50,000 on account of the $200,000 they invested, or 25%. However, if the accounts are not consolidated, then the investor would participate in the interim distribution for the account on which they received no distributions, receiving approximately $21,500 for the account where there were no distributions, in addition to having already received $50,000 for the other account. The Receiver seeks to avoid this result by consolidating the accounts of investors with multiple accounts. This includes consolidating accounts that were closed with accounts that remain open, so that each investor has one account that accurately represents the amount

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

18

that they invested and the amount that was distributed to them.  Only 26 investors are affected by this consolidation.  *See, e.g.*, *Aequitas Mgmt., LLC*, 2020 WL 1528249 at *8 )(approving the receiver's proposed consolidation of multiple accounts of single investors as an equitable outcome); *Equity Fin. Group, LLC*, 2005 WL 2143975 at *26 (approving the receiver's consolidation of multiple accounts, even where an investor used different investment vehicles to make the investment and held one account as an IRA and another individually, because "to disregard consolidation would permit this investor to receive a disproportionally larger distribution to those investors who maintained single accounts.").  The affected investors include most of those holding Disputed Claims, although the amount of their investments and pre-receivership distributions must still be reconciled.

## IV.   **CONCLUSION**

For the foregoing reasons, the Receiver respectfully requests that the Court enter an order:

(1)    Granting the Motion in its entirety;

(2)    Approving the pooling of the present and future assets of the Receivership Estates held in the constructive trust for the purpose of making distributions to the investors holding allowed claims against the Receivership Entities;

(3)    Clarifying for the avoidance of doubt that the *res* of the constructive trust is to be used only to make distributions to investors of the Receivership Entities and for the costs of administration of the Receivership Estates;

(4)    Authorizing the Receiver to make an interim distribution of $4,408,708 from the *res* of the constructive trust to non-insider investors who timely filed claims with the Receiver and whose claims are not included

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

on the list of disputed claims at Exhibit "13," utilizing the rising tide methodology, as set forth in detail on Exhibit "14";

(5)    Approving the consolidation of multiple accounts held for the benefit of a single investor;

(6)    Authorizing the Receiver to reserve the interim distribution to holders of Disputed Claims, with the reserved amount equal to the amount that would be distributed if the claim is allowed in the amount that is consistent with the books and records of the Receivership Entities as reviewed by the Receiver, pending informal or formal resolution of the dispute, and authorizing the Receiver to make the interim distribution to each holder of a Disputed Claim when (a) an amended claim is submitted to the Receiver that is consistent with the Receiver's calculations, or (b) when there is a Court order authorizing the distribution;

(7)    Authorizing the Receiver to set aside an additional $345,849, representing the interim distribution that would be made on account of the Potential Insider Claims, pending a further Court order; and

(8)    Granting such other and further relief as the Court deems just and proper.

Respectfully submitted,

DATED: February 5, 2021          SMILEY WANG-EKVALL, LLP

By:    _/s/ Kyra E. Andrassy_
       Kyra E. Andrassy
       Counsel for Robert P. Mosier, Receiver

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

1

# <u>DECLARATION OF ROBERT P. MOSIER</u>

2

3        I, Robert P. Mosier, declare as follows:

4        1.      I know each of the following facts to be true of my own personal

5    knowledge, except as otherwise stated and, if called as a witness, I could

6    and would competently testify with respect thereto.  I make this declaration

7    in support of the motion for authorization to make an interim distribution to

8    non-insider investors (the "Motion").  Unless otherwise defined in this

9    declaration, all terms defined in the Motion are incorporated herein by this

10   reference.

11       2.      On March 13, 2019, the Securities and Exchange Commission

12   ("SEC") filed a civil complaint against The Church for the Healthy Self aka

13   CHS Trust ("CHS Trust"), CHS Asset Management, Inc. ("CAM"), Kent R.E.

14   Whitney ("Whitney"), and David Lee Parrish ("Parrish") and sought the

15   appointment of a receiver.  A true and correct copy of the complaint is

16   attached as Exhibit "1."  The Court appointed me as the Receiver on March

17   14, 2019.  Whitney and Parrish have stipulated to entry of a judgment

18   against them, with penalties and disgorgement in amounts remaining to be

19   determined.  True and correct copies of these partial judgments are attached

20   hereto as Exhibits "2" and "3."

21       3.      In September 2019, the SEC amended the complaint to add a

22   number of defendants, including iCare Financial Solution, Inc. ("iCare") and

23   Ha Ngoc T. Nguyen, and sought to expand the scope of the receivership

24   estates to include iCare and Nguyen.  The Court granted that relief by order

25   entered on September 12, 2019.  I understand that Nguyen has filed an

26   answer that contests many of the allegations in the amended complaint.  For

27   purposes of the Motion, I refer to CHS Trust, CAM, and iCare as the

28   "Receivership Entities" and the Receivership Entities, Whitney, Parrish, and

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000  •  Fax 714 445-1002

1  Nguyen together as the "Receivership Defendants."  Their receivership

2  estates are together referred to as the "Receivership Estates."

3       4.    As detailed in the SEC's application filed on September 11, 2019

4  to expand the scope of the receivership estates, iCare and Nguyen were

5  named as defendants in the amended complaint and added to the

6  receivership estates because of their relationship with CHS Trust and

7  Whitney.  Nguyen was iCare's principal, but she and Whitney together

8  solicited investors.  On March 31, 2018, Nguyen sent iCare investors a letter

9  informing them that effective March 31, 2018, iCare and CHS had merged.

10  A true and correct copy of this letter, which was maintained in the

11  Receivership Entities' books and records, is attached as Exhibit "5."

12  Subsequent to this merger, Nguyen and iCare continued to solicit

13  investments, depositing investor funds into iCare's account and then writing

14  checks payable to CHS.  I am informed that CAM was set up to accept

15  deposits from brokerage accounts, and after depositing checks from

16  brokerage firms remitting funds on behalf of investors, it would transfer the

17  funds to CHS's operating account.  I have reviewed the bank records for the

18  Receivership Entities and determined that money flowed freely between the

19  three entities.

20       5.    Based on my analysis of the books and records of the

21  Receivership Defendants, I have confirmed the SEC's allegations and

22  established that between 2014 and March 14, 2019, iCare and CHS

23  together raised approximately $33.4 million from approximately 500 non-

24  insider investors, heavily targeting the Vietnamese communities in San

25  Jose, California, and Orange County, California.  Using funds obtained from

26  other investors, the Receivership Entities returned approximately $6.1

27  million to investors, leaving approximately $27.3 million in net investments

28  from non-insiders, most of which was dissipated by the individual

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

2834821.9

22

MEMORANDUM OF POINTS
AND AUTHORITIES

Receivership Defendants to fund their lavish lifestyles, including traveling, purchasing designer clothing and jewelry, and eating out regularly at high-end restaurants.  What was left was either seized by the federal government just prior to the SEC's commencement of this case or collected by me.

6.      Earlier this year, the Office of the United States Attorney charged Whitney with mail fraud and tax fraud.  Kent Whitney has entered into a plea agreement with the U.S. Attorney's office resolving the criminal charges.  A true and correct copy of the Plea Agreement is attached as Exhibit "8."  In a separate information, the Office of the United States Attorney charged Parrish with conspiracy, and he has entered a plea agreement resolving the charge.  A true and correct copy of Parrish's plea agreement is attached as Exhibit "9."

7.      To date, I have collected approximately $6.3 million.  Of this amount, $5,186,716 is from funds seized by the federal government just prior to the commencement of this case pursuant to seizure warrants.  In stipulating to having me take possession of the seized funds in my capacity as the Receiver, the United States required that the funds be distributed to the defrauded investors, to the exclusion of any trade creditors.  True and correct copies of the stipulations and orders are attached as Exhibits "6" and "7."  After payment of expenses of the Receivership Estates, I am currently holding $5,437,624.  I anticipate increasing the size of the Receivership Estates through the pursuit of various litigation claims, two of which are expected to involve the sale of real estate.

8.      Earlier this year, I obtained Court approval of my proposed claims procedure process.  A true and correct copy of the order approving that procedure is attached as Exhibit "10."  In late April, my office mailed claim packages to each investor with detailed instructions and a partially completed claim form.  This package notified the investors that the signed

SMILEY WANG-EKVALL, LLP

3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

MEMORANDUM OF POINTS AND AUTHORITIES

1  claim forms had to be received by my office no later than July 31, 2020.  My

2  counsel caused notice of the claims bar date to be published in both the

3  *Orange County Register* and the *San Jose Mercury News*.  True and correct

4  copies of the proofs of publication are attached as Exhibits "11" and "12."

5        9.      In total, my office received 450 claim forms, representing 90% of

6  the accounts.  My staff made significant efforts to reach the investors who

7  had not yet filed claims, as detailed in greater detail in Jim LeSieur's

8  declaration filed in support of the Motion.  As claims came in, we were able

9  to resolve most discrepancies between the books and records of the

10 Receivership Estates and the records of the non-insider investors.  There

11 remain approximately 7 claims that are under review, because a further

12 review of the books and records either revealed additional distributions not

13 previously accounted for or closed accounts held by the same investors

14 where they had received distributions equal to or in excess of the amount

15 invested into that account.  We are either in discussions with the remainder

16 or attempting to reach them.  A list of the outstanding Disputed Claims

17 prepared by my office is attached as Exhibit "13."  If we cannot resolve the

18 disputes, I will present them to the Court for judicial resolution.  Pending

19 resolution of these disputes, I will reserve the amount that would be

20 distributed to them if their claim was allowed in the amount that is consistent

21 with the books and records of the Receivership Defendants, as reviewed by

22 me and my team.  However, even if the claims were allowed in a higher

23 amount, I will have sufficient funds on hand to make the interim distribution

24 once the dispute is resolved.

25        10.     There are five claims that were filed by parties who I believe may

26 be insiders or associates of insiders and who we are still investigating for

27 potential claims.  These Potential Insider Claims and the reasons for my

28 concern appear in the chart below:

SMILEY WANG-EKVALL, LLP

3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

| Potential Insider | Description of Asserted Claim | Basis for Treating as a Potential Insider with a Disputed Claim |
|---|---|---|
| Joe Cini | Asserts he invested $69,000 | Mr. Cini is believed to be a friend or colleague of Parrish and/or Whitney from Chicago. We have not located any deposits and it appears that Mr. Cini contends that he "rolled over" the value of an interest he allegedly held in Maximus Worldwide, a company associated with Parrish and/or Whitney. |
| Arlene Whitney | Asserts that she invested $435,127.88 and received $15,646 | She is Whitney's mother. We have been unable to locate any funds coming into the Receivership Entities from Arlene Whitney and, in any event she received at least $48,000 from CHS. |
| Son Kim Le | Asserts that he invested $1,000,000 ($400,000 in checks and $600,000 in cash) and received $60,000. | Ha Nguyen testified that Son Kim Le was her fiancé. We have not been able to verify that Mr. Le deposited the amount claimed and is investigating whether Mr. Le received funds from Ha Nguyen or iCare traceable to investors. At a minimum, it appears that he directly or indirectly received at least $175,000. |
| Anh Le | Claims that she is owed $300,000 | Anh Le is Son Kim Le's mother. We have thus far been unable to verify that she invested this full amount and are still investigating whether she received indirect payments from funds that are traceable to investors. |
| Kathleen Domagalski | She asserts that she invested $300,000 and received $41,412.78, leaving a net investment of $258,587.22. | Ms. Domagalski was an employee of CHS who worked at the reception desk in Orange County and whose sister was the bookkeeper for the Receivership Entities and a signatory on the main bank account. Our investigation to date has revealed that Ms. Domagalski withdrew or had payments made on her behalf of more than $392,000, including at least $50,000 in payments that appear to have been made for the benefit of her children. |

Pending the outcome of these investigations or further Court order, I will hold the money that would otherwise be distributed on account of their claims, as filed, pending further Court order.

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

11.     I have reviewed the bank records for all of the Receivership Defendants.  Most (and in some cases all) of the funds coming into the individual Receivership Defendants' accounts are traceable to the Receivership Entities, and all of the funds coming into the Receivership Entities are traceable to investors.  The Receivership Entities used the funds from the investors to pay various insiders and personal expenses on behalf of insiders.  For example, CHS paid approximately $2.6 million to American Express for a card in Whitney's name that was used for personal expenses of Whitney and a number of his friends.  In addition, investor funds were also used to make distributions to other investors.

12.     I believe that it will ensure the most equitable means of distribution if the assets and liabilities of the Receivership Estates are pooled.  The Receivership Defendants were part of a unified scheme to defraud.  Investors based in San Jose typically invested their money through iCare, at least until the "merger" with CHS in March 2018, and iCare would then write a check to CHS.  Investors who were investing through qualified retirement plans had their funds deposited with CAM, which then transferred the money to CHS.  Under any scenario, the money traceable to investors that was deposited into bank accounts ended up in CHS's account with Prestige Community Credit Union in Dallas, Texas.  CHS then made transfers that benefitted Nguyen, Parrish, and Whitney, and their friends and relatives.  By pooling assets and liabilities, I am not seeking to substantively consolidate the Receivership Defendants or the Receivership Entities but only to achieve the most equitable result with the distribution.

13.     Because some investors received distributions or had bills paid on their behalf prior to my appointment, I believe that it is appropriate to use the "rising tide methodology" when making distributions.  The goal of this method is to equalize distributions so that investors who received

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

1   distributions prior to the filing of this case do not receive additional

2   distributions until the rest of the investors have received the same

3   percentage.  Using this method, I can make an interim distribution to

4   investors so that they will each have received at least 22% of their original

5   investment back.  Investors who have already received a return on their

6   investment will receive a smaller distribution than others who have not, and

7   investors who have already received more than 22% of their investment

8   back will not participate in this interim distribution.  If I were to use the net

9   investment method, all investors would receive a distribution of 16.8% of the

10  net amount owed to them, but this would mean that investors who had

11  already received distributions would be sharing equally with investors who

12  had not.  I believe avoiding this result is the most equitable outcome in this

13  case.

14          14.    There are a number of investors who had more than one

15  account.  Often, they have received distributions from one or more accounts,

16  but not the other(s).  Some of the accounts have been closed.  If we do not

17  consolidate both open and closed accounts held by an individual investor for

18  purposes of analyzing the investors' participation in this distribution, then the

19  investors with multiple accounts may ultimately fare better than investors

20  with only a single account.  In order to avoid this result, I believe it is

21  appropriate to look at each investor's investments on a consolidated basis,

22  rather than on an account by account basis.  Twenty-eight investors are

23  affected by this proposed consolidation.

24          15.    Attached hereto as Exhibit "14" is a spreadsheet of the proposed

25  distributions on account of the timely-filed claims of both non-insiders and

26  insiders.  It identifies the investors by account number and claim number

27  only in order to protect their privacy.  The investors' claim number(s) is being

28

1  listed on their mailing label, and the investors are receiving a letter with the
2  documents that directs them to the mailing label for their claim number(s).

3        I declare under penalty of perjury under the laws of the United States
4  of America that the foregoing is true and correct.

5        Executed on this 5th day of February, 2021, at Costa Mesa, California.

6

7  _____
                 ROBERT P. MOSIER

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

# DECLARATION OF JIM LESIEUR

I, Jim LeSieur, declare as follows:

1.      I am a senior project manager working with Robert P. Mosier, the receiver (the "Receiver") appointed with respect to Church for the Healthy Self, CHS Asset Management, Inc., iCare Financial Solution, Inc., Kent R.E. Whitney, Jr., David Parrish, and Ngoc Ha T. Nguyen.  I know each of the following facts to be true of my own personal knowledge, except as otherwise stated and, if called as a witness, I could and would competently testify with respect thereto.  I make this declaration in support of the Receiver's motion for authorization to make an interim distribution to investors (the "Motion").  Unless otherwise defined in this declaration, all terms defined in the Motion are incorporated herein by this reference.

2.      One of my responsibilities in this case has been to resolve disputed claims and to reach out, along with other members of the Receiver's team, to investors in the Receivership Entities who had not responded as the July 31, 2020 claims bar date approached.

3.      As background, on April 28, 2020, the Receiver's office prepared and mailed claim packages both in English and Vietnamese to all account holders.  Investors with more than one account were mailed a package for each account.  On July 1, 2020 a letter in both English and Vietnamese was mailed to account holders for all accounts for which a completed claim form had not yet been received.  In addition, if we had an email address on file, an email, again in English and Vietnamese along with the letter, was sent to non-responders reminding them of the approaching July 31, 2020 deadline.

4.      Despite these efforts, by early July, we still had not received signed claims forms for 102 accounts.  In an attempt to get these claims in, we started a telephone and email campaign.  I started making calls on July

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

3, 2020, starting first with non-responders with balances of $100,000 or more. I then lowered the threshold to $50,000.  On July 22, 2020, another member of the Receiver's team also started trying to contact all non-responders by telephone and e-mail.  Besides searching investor files for additional contact numbers and/or email addresses, in some cases contact was made by going through other sources.  By the end of July, the number of non-responsive accounts had been reduced to 50, and of those 50 accounts, 18 of them had already received payouts on their original investments of more than 30%.  The net invested balance of the non-responsive accounts is $787,257, with one investor accounting for approximately $300,000 of that amount.

5.    As an example of our diligence, after repeated calls and voice messages to a non-responding investor who lives locally, I decided to try to make contact in person. In the early afternoon of July 31, 2020, I drove to the address of the non-responsive investor who had more than $300,000 invested.  The garage door was open with three cars in the driveway.  A teenage boy finally answered the door and said his parents were not home but would return home later in the day.  I left my business card and asked him to have his parents call me.  Alas, the Receiver's office has yet to hear from this investor.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this 5th day of February, 2021, at Costa Mesa, California.

JIM LESIEUR

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

**PROOF OF SERVICE**

**STATE OF CALIFORNIA, COUNTY OF ORANGE**

At the time of service, I was over 18 years of age and not a party to this action.  I am employed in the County of Orange, State of California.  My business address is 3200 Park Center Drive, Suite 250, Costa Mesa, CA 92626.

On **2/5/2021**, I served true copies of the following document(s) described as

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION OF RECEIVER, ROBERT P. MOSIER, FOR ORDER AUTHORIZING THE RECEIVER TO MAKE AN INTERIM DISTRIBUTION FROM THE RES OF THE CONSTRUCTIVE TRUST TO NON-INSIDER INVESTORS WHO TIMELY FILED CLAIMS WITH THE RECEIVER, USING THE RISING TIDE METHODOLOGY, AND FOR RELATED RELIEF; DECLARATIONS OF ROBERT P. MOSIER AND JIM LESIEUR IN SUPPORT THEREOF**

on the interested parties in this action as follows:

**(X) (BY COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")) –** Pursuant to United States District Court, Central District of California, Local Civil Rule 5-3, the foregoing document will be served by the court via NEF and hyperlinked to the document. On **2/5/2021**, I checked the CM/ECF docket for this case and determined that the aforementioned person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated.

**(X) (BY U.S. MAIL).**  I enclosed the document(s) in a sealed envelope or package and placed the envelope for collection and mailing, following our ordinary business practices. I am readily familiar with the practice of  Smiley Wang-Ekvall, LLP for collecting and processing correspondence for mailing.  On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with USPS in a sealed envelope with postage fully prepaid.  I am a resident or employed in the county where the mailing occurred.  The envelope was placed in the mail at Costa Mesa, California.

**( ) (BY E-MAIL).** By scanning the document(s) and then e-mailing the resultant pdf to the e-mail address indicated above per agreement. Attached to this declaration is a copy of the e-mail transmission.

**( ) (BY FACSIMILE)**. I caused the above-referenced documents to be transmitted to the noted addressee(s) at the fax number as stated. Attached to this declaration is a "TX Confirmation Report" confirming the status of transmission. Executed on _____, at Costa Mesa, California.

**( )  STATE** I declare under the penalty of perjury under the laws of the State of California that the above is true and correct.

**(X) FEDERAL** I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Executed on February 5, 2021, at Costa Mesa, California.

_____/s/ *Lynnette Garrett*_____
Lynnette Garrett

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

## SERVICE LIST

## BY COURT VIA NOTICE OF ELECTRONIC FILING ("NEF"):

- **Kyra E Andrassy**
  kandrassy@swelawfirm.com,jchung@swelawfirm.com,lgarrett@swelawfirm.com,gcruz@swelawfirm.com

- **Lynn M Dean**
  deanl@sec.gov,LAROFiling@sec.gov,longoa@sec.gov,irwinma@sec.gov

- **William H Forman**
  wforman@scheperkim.com,rramirez@scheperkim.com,cspears@scheperkim.com

- **Stanley L Friedman**
  friedman@friedmanlaw.org

- **John P Kreis**
  jkreis@kreislaw.com,j.kreis@ca.rr.com

- **Eliot F Krieger**
  ekrieger@skt.law

- **Stanley C Morris**
  scm@cormorllp.com,1903134420@filings.docketbird.com,5564279420@filings.docketbird.com

- **Robert P Mosier**
  rmosier@mosierco.com

- **Jennifer D Reece**
  reecej@sec.gov,stewartan@sec.gov,minnickd@sec.gov,justicet@sec.gov,fairchildr@sec.gov

- **Brandon Scott Reif**
  breif@reiflawgroup.com,docketRLG@ecf.courtdrive.com,docket@reiflawgroup.com

- **Michael Lewis Simon**
  msimon@swelawfirm.com,jchung@swelawfirm.com,lgarrett@swelawfirm.com,gcruz@swelawfirm.com

- **Jeffrey L Steinfeld**
  jsteinfeld@scheperkim.com,rramirez@scheperkim.com

## BY U.S. MAIL:

**Luke T. Ho**

1212 Heritage Way

Covina, CA 91724

BY U.S. MAIL (Continued):

American Express Company
c/o CT Corporation System
818 West Seventh Street,
Suite 930
Los Angeles, CA 90017

American Express Company
Attention:  Corporate Officer
200 Vesey Street
New York, NY 10285

Bank of America, N.A.
c/o CT Corporation System
818 West Seventh Street,
Suite 930
Los Angeles, CA 90017

Bank of America, N.A.
Attention:  Corporate Officer
100 North Tryon Street
Charlotte, NC 28255

Capital One Bank (USA), N.A.
c/o Corporation Service
Company
2711 Centerville Road, Suite
400
Wilmington, DE 19808

Capital One Bank (USA), N.A.
Attention:  Corporate Officer
1680 Capital One Drive
McLean, VA 22102-3491

Merrick Bank Corporation
c/o CT Corporation System
1108 E. South Union Avenue
Midvale, UT 84047

Merrick Bank Corporation
Attention:  Corporate Officer
10705 S. Jordan Gateway
#200
South Jordan, UT 84095

JPMorgan Chase Bank, N.A.
c/o CT Corporation
818 Seventh Street, Suite 930
Los Angeles, CA 90017

JP Morgan Chase Bank, N.A.
Attention:  Corporate Officer
1111 Polaris Parkway
Columbus, OH 43240

Barclays Bank
Attention:  Corporate Officer
125 S. West Street
Wilmington, DE 19801

Credit One Bank, N.A.
Attention:  Corporate Officer
6801 S. Cimarron Road
Las Vegas, NV 89113

First Premier Bank
c/o Agent for Service
601 S. Minnesota Avenue
Sioux Falls, SD 57104-4824

First Premier Bank
Attention: Corporate Officer
601 S. Minnesota Avenue
Sioux Falls, SD 57104-4824

Discover Financial Services
c/o CT Corporation System
208 So. LaSalle Street, Suite
814
Chicago, IL 60604

Discover Financial Services
Attention:  Corporate Officer
2500 Lake Cook Road
Riverwoods, IL 60015

First Savings Bank
Attention:  Corporate Officer
201 North Third Street
Beresford, SD 57004

Bryant State Bank
Attention:  Corporate Officer
124 West Main Street
Bryant, SD 57221

Mid America Bank
c/o Agent for Service
802 Ames
Baldwin City, KS 66006

Mid America Bank
Attention:  Corporate Officer
P.O. Box 4
802 Ames
Baldwin City, KS 66006

Franchise Tax Board Chief
Counsel
c/o General Counsel Section
P.O. Box 1720, MS:A-260
Rancho Cordova, CA 95741-
1720

2816773.1

Internal Revenue Service
P.O. Box 7346
Philadelphia, PA 19101-7346

The Bancorp Bank
Attn:  Legal Service of
Process Team
409 Silverside Road
Wilmington, DE 19809

Pinnacle Marketing Group
Attn:  President
17155 Gillette Avenue
Irvine, CA 92614

Lakeview Loan Servicing, LLC
Attn:  Manager
4425 Ponce De Leon Blvd.,
MS5251
Coral Gables, FL 33146

Troutman Sanders
Attn.:  Michael Lacy, counsel
for Lakeview Loan Servicing,
LLC
1001 Haxall Point, 15th Floor
Richmond, VA 23219

Texas Comptroller of Public
Accounts
Franchise Tax Section
P.O. Box 149348
Austin, TX 78714-9348

AMERICAN EXPRESS
PO BOX 0001
LOS ANGELES, CA 90096-
8000

CITY OF WESTMINSTER-
BUSINESS LICENSE
8200 WESTMINSTER BLVD.
WESTMINSTER, CA 92683

LHQ RADIO / LE'VANA
QUEEN
7766 WESTMINSTER BLVD.
WESTMINSTER, CA 92683

IBC TV
14452 CHESTNUT STREET
WESTMINSTER, CA 92683

KVMD TV, LLC
2323 CORINTH AVENUE
WEST LOS ANGELES, CA
90064

QUALITY ADVERTISING
12864 MAXWELL DRIVE
TUSTIN, CA 92782

LIVE365
950 TOWER LANE, SUITE
1550
FOSTER CITY, CA 94404

MERIDIAN BUSINESS
CENTERS
555 REPUBLIC DRIVE, SUITE
200
PLANO, TX 75074

TEXAS COMPTROLLER OF
PUBLIC AFFAIRS
FRANCHISE TAX SECTION
PO BOX 149348
AUSTIN, TX 78714-9348

QUARTZ HILL LLC
11704 WILSHIRE BLVD.,
SUITE 202
LOS ANGELES, CA 90025

SOUTHERN CALIFORNIA
EDISON
P.O. BOX 300
ROSEMEAD, CA 91772-0001

T-MOBILE
PO BOX 790047
ST. LOUIS, MO 63179-0047

THE DEGRASSE LAW FIRM,
P.C.
1800 BERING SUITE 1000
HOUSTON, TX  77057

TIME WARNER CABLE
PO BOX 60074
CITY OF INDUSTRY, CA
91716-0074

VIETFACE TV
16155 BROOKHURST STREET
FOUNTAIN VALLEY, CA 92708

TRIDER REAL ESTATE
21  VIA PALLADIO
NEWPORT BEACH, CA 92657

VCAL TV/LE'VANA QUEEN,
INC.

VSTAR TV
9393 BOLSA , SUITE D
WESTMINSTER, CA 92683

7766 WESTMINSTER BLVD.
WESTMINSTER, CA 92683

| | | |
|---|---|---|
| VILLAS FASHION ISLAND<br>1000 SAN JOAQUIN PLAZA<br>NEWPORT BEACH, CA 92660 | VNCR<br>16047 BROOKHURST STREET<br>FOUNTAIN VALLEY, CA 92708 | ACS<br>PO BOX 7051<br>UTICA, NY 13504-7051 |
| ACAPITA EDUCATION<br>FINANCE CORP<br>PO BOX 1308<br>WACO, TX 76703-1308 | ACURA FINANCIAL SERVICES<br>P.O. BOX 5025<br>SAN RAMON, CA 94583-0925 | AMERICAN EQUITY<br>INVESTMENT LIFE INS CO<br>6000 WESTOWN PARKWAY<br>WEST DES MOINES, IA 50266 |
| ALLIANZ LIFE INSURANCE CO<br>OF NO AMERICA<br>5701 GOLDEN HILLS DRIVE<br>MINNEAPOLIS MN 55416 | ALLIED TRUSTEE SERVICES<br>990 RESERVE DRIVE, SUITE<br>208<br>ROSEVILLE, CA 95678 | ANTHEM BLUE CROSS<br>PO BOX 51011<br>LOS ANGELES, CA 90051-<br>5311 |
| AMERICAN GENERAL LIFE &<br>ACCIDENT INS PO BOX<br>305355<br>NASHVILLE, TN 37250 | ANTHEM BLUE CROSS<br>PO BOX 659960<br>SAN ANTONIO, TX 78265-<br>9146 | BANK OF AMERICA<br>PO BOX 37176<br>SAN FRANCISCO CA 94137-<br>0176 |
| AT&T<br>PO BOX 5014<br>CAROL STREAM, IL 60197-<br>5014 | BANK OF AMERICA<br>P.O. BOX 15284<br>WILMINGTON DE 19850 | BLOOMINGDALES<br>PO BOX 9001108<br>LOUISVILLE KY 40290-1108 |
| BANK OF AMERICA N.A.<br>PO BOX 5170<br>SIMI VALLEY CA 93062-5170 | BANK OF AMERICA N.A.<br>PO BOX 15796<br>WILMINGTON DE 19886-<br>5796 | CALI TODAY<br>1460 TULLY RD, SUITE 601<br>SAN JOSE CA 95122 |
| BLUE SHIELD CALIFORNIA<br>601 POTRERO GRANDE DRIVE<br>MONTEREY PARK CA  91755 | BROWN & BROWN<br>PROGRAM INS SERV INC.<br>DBA CAL SURANCE<br>PO Box 7048<br>ORANGE CA 92863 | CITIZENS CHOICE<br>HEALTHPLAN HMO<br>8425 BRENTWOOD BLVD.<br>BRENTWOOD  CA 94513 |
| CARE TRUST NETWORKS<br>PO BOX 192525<br>SAN FRANCISCO CA 94119-<br>2525 | CHASE<br>PO BOX 6294<br>CAROL STREAM IL 60197-<br>6294 | CITY OF SAN JOSE, BUSINESS<br>TAX & REG. PERMIT DEPT.<br>PO Box 39000<br>SAN FRANCISCO CA<br>94139-0001 |

CITY OF HOUSTON
PO BOX 1560
HOUSTON TX  77251

CITY OF SAN JOSE
PO BOX 398242
SAN FRANCISCO CA 94139-
8242

COLLECTION BUREAU OF
AMERICA
25954 EDEN LANDING ROAD
HAYWARD, CA 94545-3816

CITY OF SAN JOSE - PARKNG
VIOLATIONS
PO BOX 11023
SAN JOSE CA 95103

COAST  PERSONNEL
SERVICES, INC.
2295 DE LA CRUZ BLVD.
SANTA CLARA  CA 95050

DEPARTMENT OF TAX
COLLECTIONS
PO BOX 60534
CITY OF INDUSTRY CA 91716-
0534

COUNTY OF SANTA CLARA
TAX COLLECTOR'S OFFICE
70 W. HEDDING STREET
East Wing 6th Floor
SAN JOSE CA 95110

DEPARTMENT OF MOTOR
VEHICLES
PO BOX 942869
SACRAMENTO CA 94269-
0001

FARMERS INSRUANCE
2459 ALVIN AVE
SAN JOSE CA 95121

DEPARTMENT OF THE
TREASURY INTERNAL
REVENUE SERVICE      OGDEN
      UT      84201-0038

DIOCESE OF SAN JOSE
1150 NORTH FIRST STREET,
Suite 100
SAN JOSE CA 95112-4966

FRANCHISE TAX BOARD
PO BOX 942857
SACRAMENTO CA 94257-
0511

FARMERS INSURANCE
GROUP
4680 WILSHIRE BLVD.
LOS ANGELES  CA 90010

FRANCHISE TAX BOARD
PO BOX 942840
SACRAMENTO CA 94240-
0001

GREGORY HUAN PHAN, M.D.
20269 STEVEN CREEK BLVD.
CUPERTINO CA 95014

GENWORTH LIFE
PO BOX 10720
LYNCHBURG VA 24506-0720

GOOD START GENETICS
PO BOX 416658
BOSTON MA 02241-6658

IRONBEAM, INC.
141 W. JACKSON BLVD, SUITE
#2600
CHICAGO IL 60604

HOUSTON HOUSING
AUTHORITY
PO BOX 2561
HOUSTON TX 77252-2561

IN LANGUAGE RADIO
PO BOX 318100
SAN FRANCISCO CA 94131

LAB CORPORATION
PO BOX 2240
BURLINGTON NC 27216-2240

JMAC LENDING
PO BOX 60509
CITY OF INDUSTRY CA 91716-
0509

KVVN-AM 1430, ATTN:
ACCOUNTING DEPT.
55 Hawthorne St., Ste. 900
SAN FRANCISCO CA 94105

MARAJO
25892 TOWNE CENTRE DR
FOOTHILL RANCH CA 92610-
3437

MACY'S
PO BOX 689195
DES MOINES IA 50368-9195

MAI TRAVEL & TOURS
2114 SENTER RD., SUITE 12
SAN JOSE CA 95112

NATIONAL FUTURES
ASSOCIATION  300 SOUTH
RIVERSIDE PLAZA, Suite 1800
CHICAGO IL 60606

MERIWEST CREDIT UNION
P.O. BOX 530953
SAN JOSE CA 95153-5353

MIDLAND NATIONAL LIFE INS
CO
PO BOX 79907
DES MOINES IA 50325-0907

NATIONAL WESTERN LIFE
INSURANCE CO
850 EAST ANDERSON LANE
AUSTIN TX 78752-1602

NATIONAL LIFE INSURANCE
COMPANY
ONE NATIONAL LIFE DRIVE
MONTPELIER VT 5604

NATIONAL INSURANCE
PRODUCER REGISTRY 1100
WALNUT STREET, SUITE 1500
KANSAS CITY MO 64106

ON TIME REALTY
999 STORY RD., 9027
SAN JOSE CA 95122

NATIONWIDE RECOVERY
SYSTEMS
PO BOX 702257
DALLAS TX 75370-2257

NORTH AMERICAN CO FOR
LIFE & HEALTH INS
ONE SAMMONS PLAZA
SIOUX FALLS SD 57193

PHAROS CONSULTING
SERVICES
3501 THOMAS RD, SUITE #3
SANTA CLARA  CA 95054

PACIFIC GAS & ELECTRIC
COMPANY
77 BEALE STREET
SAN FRANCISCO CA 94105

PG&E
BOX 997300
SACRAMENTO  CA 95899-
7300

RAYMOND JAMES CORP &
EXEC SERVICES
880 CARILLON PARKWAY ST.
PETERSBURG   FL 33716

PHU NU CALI
PO BOX 610205
SAN JOSE CA 95161

QUEST DIAGNOSTICS
PO BOX 7306
HOLLISTER MO 65673-7306

REVENUE RECOVERY INC.
43920 MARGARITA RD., STE F
TEMECULA CA 92592-2736

REGAL OAKS COMMUNITY
ASSOCIATION  C/O STERLING
ASSOCIATION SERVICES, INC.,
PO Box 38113
HOUSTON TX 77238-8113

RELIANT
PO BOX 650475
DALLAS TX 75265-0475

SCANDINAVIAN DESIGNS
317 SOUTH B STREET
SAN MATEO CA 94401

SAFECO INSURANCE
PO BOX 515097
LOS ANGELES  CA 90051

SAN LEANDRO POLICE
DEPARTMENT TRAFFIC
ENFORCEMENT OFFICE
PO Box 42034
PHOENIX AZ 85080

SUMMERTON
CONDOMINIUM
ASSOCIATION, C/O ACCESS
ASSOCIATION SERVICES, INC.
16264 Church St., Suite 102
MORGAN HILL  CA 95037

SMITH-ANDERSON WINE
GROUP
1004 CLINTON STREET
NAPA CA 94559

SONG VIET
3019 SENTER RD
SAN JOSE CA 95111

T-MOBILE - MOBILEONE LLC -
2138
2200 EASTRIDGE LOOP, STE
5534
SAN JOSE CA 95122-1410

SUNRISE CREDIT SERVICES,
INC.
P.O. BOX 9100
FARMINGDALE NY 11735-
9100

SYNCHRONY BANK/AMAZON
PO BOX 960013
ORLANDO FL 32896-0013

USA TOUCH UP AUTO BODY
INC.
818 NORTH 10TH STREET
SAN JOSE CA 95112

T-MOBILE
PO BOX 51843
LOS ANGELES CA 90051-6173

UNITED STATES POSTAL
SERVICE
3775 INDUSTRIAL BLVD WEST
SACRAMENTO CA 95799-
0100

VIET MULTIMEDIA, LLC
980 S. SECOND STREET
SAN JOSE CA 95112

US BANK
PO BOX 790408
ST. LOUIS MO  63179-0408

VERIZON WIRELESS
PO BOX 660108
DALLAS TX 75266-0108

VS REALTY & LOANS, INC.
2114 SENTER ROAD, SUITE 11
SAN JOSE CA 95112

VIETNAM PRINTING
1261 EAST SANTA CLARA ST
SANTA CLARA  CA 95116

VIETODAY TELEVISION
2330 S. 10TH STREET
SAN JOSE CA 95112

WELLS FARGO BANK N.A.
PO BOX 3908 114
PORTLAND OR 97208-0000

WELLS FARGO BANK
P.O. BOX 29779
PHOENIX AZ 85038

WELLS FARGO BANK N.A.
PO BOX 6995
PORTLAND OR 97228-6995

ZOUVES FERTILITY CENTER
1241 E. HILLSDALE BLVD., STE
100
FOSTER CITY CA 94404

WELLS FARGO VISA
PO BOX 10347
DES MOINES IA 50306-0347

YELLOW PAGES ONLINE
SERVICES
P.O. BOX 630188
IRVING TX 75063

COUNTY OF ORANGE
ATTN: TREASURER – TAX
COLLECTOR
P.O. BOX 1438
SANTA ANA, CA 92702-1438

STATE OF CALIFORNIA
EMPLOYMENT
DEVELOPMENT
DEPARTMENT
P.O. BOX 826880

EXECUTIVE DIRECTOR
STATE BOARD OF
EQUALIZATION
450 N. ST., MIC:73

TIA M. CAREY
SOUTHSIDE WINDOW
CLEANING & JANITORIAL
736 W. LAMARK DR.
ANAHEIM, CA 92807

SACRAMENTO, CA 94280-0001

SACRAMENTO, CA 95814-0073

COMPLETE DISCOVER SOURCE, INC.
250 PARK AVE., 18TH FLOOR
NEW YORK, NY 10177

NICHOLAS SAPP
5051 ALTON PKWY, APT. 227
IRVINE, CA 92604

SCHEEF & STONE, LLP
500 N. AKARD ST., #2700
DALLAS, TX 75201

SO. CALIFORNIA SECURITY CENTERS INC.
16711 PARKSIDE AVE.
CERRITOS, CA 90703

AEGIS SECURITY INSURANCE COMPANY
PO BOX 889004
SAN DIEGO, CA 92168-9004

BEST CONNECTION INSURANCE AGENCY
3280 EL CAMINO REAL
SANTA CLARA, CA 95051-2820

BOB BADER COMPANY INSURANCE AGENCY
8425 WOODFIELD CROSSING BLVD., SUITE 200
INDIANAPOLIS, IN 46240

PACIFIC GAS AND ELECTRIC COMPANY
P.O. BOX 8329
STOCKTON, CA 95208

USO
P.O. BOX 799060
DALLAS, TX 75379-9060